[Civ. No. 20691. Second Dist., Div. One. June 13, 1955.]

Estate of MARGARET S. BULLOCK, Deceased. LYNDOL L. YOUNG, Appellant, v. M. BRUCE GILREATH, Respondent.

Lyndol L. Young, in pro. per., for Appellant.

Vaughan, Brandlin & Wehrle, Brady, Nossman & Walker and Fred F. Wehrle for Respondent.

WHITE, P. J.—Margaret S. Bullock died May 9, 1952, leaving a last will and testament in which she named Rev. Lorenzo M. Malone, S.J., and M. Bruce Gilreath, coexecutors and cotrustees. The former declined to act in either capacity and on May 29, 1952, M. Bruce Gilreath was granted letters testamentary and since that date he has served as such executor. On December 31, 1953, the superior court confirmed his appointment by decedent's will as trustee.

By the terms and provisions of decedent's will, the bulk of her estate, comprised of securities, cash and personal property and appraised at the value of $2,515,992.73 was placed in trust for the use and benefit of her sister, Helen Bullock Chappellet, and decedent's nieces and nephew, Mary Margaret Fewel Smith, Valerie Chappellet, Felicia Helen Chappellet and John Bullock Fewel, or their issue. Decedent's said sister received a legacy of $100,000, and under the trust provisions of the will is entitled to income from three-eighths of the trust estate during her lifetime, and each of the said nieces and nephew is entitled to the income from one-eighth of the trust estate until they attain designated ages, at which times they are entitled to distribution of the one-eighth of the trust estate set aside for their use and benefit. The income from the remaining one-eighth of the trust estate is to be accumulated for the use and benefit of decedent's said sister, nieces and nephew.

The trust is to be terminated upon the death of the survivor of decedent's said sister, nieces and nephew, and upon

termination, the corpus of the trust estate is to be distributed to the issue of the said nieces and nephew, and if none, then equally to the Sisters of Charity of Albuquerque Hospital, Albuquerque, New Mexico, and Rev. Lorenzo M. Malone, S.J., for distribution among such charities as he shall direct.

On May 29, 1952, respondent, as executor, filed his petition for an order authorizing the continuance of a certain business allegedly belonging to decedent. The business sought to be continued was that of producing and distributing, jointly with Thetis Film, an Italian corporation, 26 motion pictures of approximately 26½ minutes in length, all suitable primarily for television presentation in the United States. The maximum cost for the production of said 26 motion pictures was to have been $325,000, with the provision for an increase not to exceed 20 per cent of the maximum cost, which was to have been borne equally by decedent and said Thetis Film, and the profits therefrom shared by them in somewhat the same fashion.

In support of his petition aforesaid, respondent, as executor, contended that in setting up the Italian television venture he executed the various agreements forming the basis for the television venture, for and on behalf of decedent. In other words, that decedent was his undisclosed principal and that he signed merely as her agent. The executor's petition asked that he be authorized to proceed under the terms of the television venture contract and to impose the liabilities of said contract on the estate, the first of which would be the assumption by the estate of a payment of $175,000 which was then due under the contract, as well as undetermined liabilities that might arise in the future.

Becoming apprehensive that if the foregoing petition was granted, their interests in the estate would be jeopardized, all primary beneficiaries under the will procured the services of counsel to intervene and oppose the petition of the executor.

Appellant herein represented Mary Margaret Fewel Smith and John Bullock Fewel; Attorney Charles E. Quirollo appeared for Helen Bullock Chappellet, and Wright, Wright, Green and Wright for the California Trust Company, guardian of the estates of Felicia Helen Chappellet and Valerie Chappellet, minors.

When the foregoing petition of the executor came on for hearing appellant and the attorneys for the other primary beneficiaries under decedent's will, appeared and objected to and resisted said executor's petition. Following a hearing

commencing on June 4, 1952, and ending on June 12, 1952, the superior court made its order denying the executor's petition in its entirety. No appeal was taken therefrom and the order is now final. In addition to the foregoing it is unquestioned and found by the court that the legal services rendered by appellant extended over the period from May 15, 1952, to December 2, 1953, and was successful in each instance where his services were performed.

Following completion of his services appellant filed in the estate his petition for an order allowing attorneys' fees in a sum to be determined by the court and to be paid from the assets of said estate. After a hearing upon appellant's petition for fees the court made its order denying the same. From such order appellant prosecutes this appeal.

Among the pertinent findings of the trial court are the following:

"VIII

"It is true that petitioner Lyndol L. Young appeared in various court proceedings and hearings on behalf of said Mary Margaret Fewel Smith and John Bullock Fewel and performed various legal services consisting primarily of objections to Executor's petition to continue business involving the marketing of television films and recordings, financing of said television productions and operating an electrical appliance distributorship, and objections to Executor's petition for authority to pay Federal Estate Taxes and State Inheritance Taxes from the income of the decedent's estate and testamentary trust.

. . . . . . . . . . . . .

"X

"It is true that the legal services of petitioner Lyndol L. Young did not increase, preserve or protect the estate or any of its assets.

"XI

"It is true that the legal services performed by petitioner Lyndol L. Young were for the benefit of the income beneficiaries and to the detriment of the residuary beneficaries under the will of said decedent.

"XII

"It is true that the legal services performed by petitioner Lyndol L. Young were made necessary by reason of a dif-

ference of opinion between the executor and his attorneys, on the one hand, and the beneficiaries and their respective attorneys, including petitioner Lyndol L. Young, on the other, as to the interpretation of the will and the administration of the estate.''

.    .    .    .    .    .    .    .    .    .    .    .    .

## "XVII

"It is true that petitioner Lyndol L Young performed substantial legal services on behalf of said estate and all of the said beneficiaries at the request of and under the direction of the Court in conducting an extensive examination, of M. Bruce Gilreath, Executor, under oath, at the hearing before the Court from November 16th to December 2nd, 1953, concerning the qualifications of M. Bruce Gilreath to be appointed Trustee of said estate; that the entire examination conducted by petitioner Lyndol L. Young is set forth in the reporter's transcript covering said hearing; . . . That neither the estate nor any of the beneficiaries or persons interested in the estate received any benefit from said services described in this Paragraph XVII.''

There can be no doubt in this case that appellant rendered legal services which, as the court stated in its memorandum of opinion: ''were of value to the estate,'' and that appellant's clients, through his efforts were, as the court stated, ''successful in each instance'' wherein they appeared as objectors and opposed the actions and contemplated actions of the executor and trustee under the will.

But the question which confronted the trial court, and is now presented to us, is whether appellant can be compensated for his legal services out of the general assets of the estate.

The applicable rule is thus stated in *Estate of Reade,* 31 Cal.2d 669, 671, 672 [191 P.2d 745]:

''Compensation for the services of an attorney must be paid by the person employing him, in the absence of a special agreement, special statutory provision, or exceptional circumstances. The latter exist in certain actions in equity. For example a plaintiff who has succeeded in protecting, preserving or increasing a fund for the benefit of himself and others may be awarded compensation from the fund or the services of his attorney. This is to compel those for whose benefit the action or proceeding was taken to bear their share of the expenses of the litigation; and this rule is equitable and just. (Citations.)

■ "While the probate court has no general equity jurisdiction and its jurisdiction generally is confined to settlement of the estates of deceased persons, it does have the power to apply ·equitable principles in aid of its functions as a probate court." See also *Estate of Lundell,* 107 Cal.App.2d 463, 464 [237 P.2d 62], wherein it is said that such an allowance of attorneys' fees for services rendered to an estate "is predicated upon the equitable rule that fees for legal services rendered in preserving a common fund for the benefit of all heirs or persons interested in an estate are proper charges against such fund."

Respondent insists that the foregoing equitable doctrine does not apply where, as in the instant proceedings, all other primary beneficiaries interested in the common fund or their attorneys, have rendered services substantially the same as those rendered by the beneficiary or his attorney who now seeks compensation from the common fund. Research by counsel and the court has not been rewarded with any case in California deciding this precise point of law. ■ We are, however, inclined to the view adopted by other jurisdictions that allowance of attorneys' fees for one party to be charged on the general fund where the other interested parties are represented by attorneys in the same litigation, will not be made. That such an allowance is justified only where the other parties have stood without counsel and would reap the benefits of the services rendered by the attorney conducting the proceedings. That where, as in the instant case, the other interested parties all retained counsel, the equitable rule of paying from the general fund does not apply (*Cambron* v. *Pottinger,* 310 Ky. 70 [219 S.W.2d 401, 403]; *Thirlwell's Administrator* v. *Campbell,* 74 Ky. 163, 167, 168; *Foster* v. *Foster,* 126 Ala. 287 [28 So. 624, 625, 626]; *Woods* v. *McLain,* 112 W.Va. 612 [166 S.E. 279, 280]; 14 Am.Jur. 47, 48; see also notes, 49 A.L.R. 1149, 107 A.L.R. 749.) This interpretation of the rule would seem to be strengthened by the language of our own Supreme Court in *Estate of Reade, supra,* page 672, wherein, with reference to the purpose of the rule, it is said: "This is to compel those for whose benefit the action or proceeding was taken to bear their share of the expenses of litigation; and this rule is equitable and just." However, in the instant proceeding, as was said by the learned trial judge in his memorandum of opinion, "The case at bar is not a case where a fund has been created or preserved by the efforts of one beneficiary for the benefit of

all. The saving to or benefit to this estate was occasioned by the services of the attorneys for the several beneficiaries.'' We find ourselves in accord with the view of the trial court that the reasons of justice and equity, underlying the foregoing rule, are not here present, and the equitable doctrine contended for is therefore, not applicable.

Appellant earnestly insists that the foregoing findings of the trial court that the legal services performed did not increase, preserve or promote the estate or any of its assets is without evidentiary support. Appellant directs our attention to the statements made by the trial court in the memorandum of opinion and which we have narrated above. But, as heretofore pointed out, appellant and his client were joined by all the other primary beneficiaries and the conclusion seems to us inescapable that the proceedings initiated by the primary beneficiaries in unison were not prosecuted for the benefit of the estate but for their own benefit. In California there is no general rule which permits the recovery of attorneys' fees by a successful litigant. Ordinarily, compensation for the services of an attorney must be paid by the client who employs him. True, under certain exceptional circumstances, such as a special agreement, special statutory provisions, or certain actions in equity, attorneys' fees may be awarded by the court to a litigant. We are satisfied that appellant cannot bring himself within any of the recognized exceptions to the general rule that each party must pay his own attorneys' fees, since his client has benefited and the other beneficiaries benefited no one but themselves. Conceding that, as the trial court stated, the legal services rendered by appellant in association with counsel for the other primary beneficiaries did in fact protect, preserve and increase the estate of decedent, the primary purpose of the objections filed by them, was to benefit themselves. As pointed out by respondent:

''It goes without saying that the services rendered by appellant and the attorneys for the primary beneficiaries in connection with the construction of decedent's will as it pertains to the limitation upon the sale of shares of Bullock's, Inc., the source of funds with which to pay and discharge estate and inheritance taxes, and the Petition for Partial Distribution and Petition for Instructions to Executor and/or Trustee filed by appellant in decedent's estate, which is closely associated with the construction of decedent's will, were rendered for the sole purpose of obtaining an order from

the Superior Court determining that the income beneficiaries were entitled to the income from decedent's estate, and trust from the date of her death and that the estate and inheritance taxes were to be paid and discharged from the corpus of decedent's estate. By the determination that the income beneficiaries were entitled to the income from decedent's estate and trust from the date of her death and burdening the corpus with the payment and discharge of estate and inheritance taxes, the remaindermen under decedent's will were prejudiced in that the corpus was reduced in an amount equal to the estate and inheritance taxes. While it is true that the primary beneficiaries represented by appellant and said other attorneys are remaindermen as well as income beneficiaries, there are contingent remaindermen under decedent's will who have been prejudiced by such a determination, namely the issue, born and unborn, of decedent's nieces and nephew, and Sisters of Charity of Albuquerque Hospital, Albuqueque, New Mexico, and Rev. Lorenzo M. Malone, S.J.''

Appellant's contention, heretofore adverted to, that statements made by the trial judge in his memorandum of opinion may be used to contradict, change or impeach, the findings made cannot be sustained. ■ While the memorandum of the trial judge may be used for the purpose of explaining his decision, it cannot be used to impeach the findings and judgment. As was said in *Southern Calif. Freight Lines* v. *San Diego Elec. Ry. Co.*, 66 Cal.App.2d 672, 676 [152 P.2d 470] :

''Counsel for plaintiff argues that since the adoption of the new Rules on Appeal a written opinion of a trial judge may become a proper part of the record on appeal. (Rules on Appeal, rule 5, subd. a.) From this it is argued that such written opinion must be harmonious in all respects with the findings and judgment to support them on appeal. We do not believe that it was the intention of the rule makers to change the long established rule that the written opinion of the trial judge may not be used to impeach his solemn findings and judgment. Such opinions are often an aid to an appellate court in order to disclose the process of reasoning of the trial judge in reaching his ultimate decision. The new rules make such opinions available to appellate courts and this is as far as they go. There is nothing in the rules evidencing a contrary intention. (See 17 So.Cal.L.Rev. 107.) As said in *DeCou* v. *Howell*, 190 Cal. 741 [214 P. 444] :

'' 'The deliberations of the court are conclusively merged in the judgment. The findings of fact and conclusions of

law constitute the decision which is the final, deliberate expression of the court. To hold that oral or written opinions or expressions of judges of trial courts may be resorted to to overturn judgments would be to open the door to mischievous and vexatious practices. Neither a juror nor a judge is permitted to impeach his verdict or judgment.' ''

The order from which this appeal was taken is affirmed.

Doran, J., and Drapeau, J., concurred.

A petition for a rehearing was denied July 11, 1955, and appellant's petition for a hearing by the Supreme Court was denied August 11, 1955.