[Civ. No. 50655. Second Dist., Div. Five. Feb. 8, 1978.]

DORIS M. CARROLL, Plaintiff and Appellant, v.
PURITAN LEASING COMPANY, Defendant and Respondent.

482

**COUNSEL**

Fred Crane, Stuart Sachs and Linda Audrey Underwood for Plaintiff and Appellant.

Cavalletto, Webster, Mullen & McCaughey, Arthur W. Carlson and Charles S. Bargiel for Defendant and Respondent.

**OPINION**

**STEPHENS, J.**—The plaintiff appeals from a judgment of dismissal issued when plaintiff (hereinafter appellant) failed to amend the complaint within the time allowed by the court after the demurrer of

defendant Puritan Leasing Company (hereinafter Puritan) had been sustained.

In February 1972, appellant executed a written guarantee of the performance of certain lease agreements which existed between her then husband, Nicholas A. Mitrovich, and respondent Puritan Leasing Company. Under the lease, Puritan supplied Mr. Mitrovich with restaurant equipment. Thereafter, appellant and her husband, Mr. Mitrovich, failed to perform their obligations under the lease and guarantee agreements.

Puritan brought an action against appellant and her husband in the Superior Court of Santa Barbara County.[1] Trial was held in May 1974 before the court, a jury having been waived. At the conclusion of the trial, one of the court's findings of fact was that the leases sued upon had been executed by the parties and had been "guaranteed by Doris M. Mitrovich." The judgment declared "that plaintiff Puritan Leasing Company take judgment against defendants Nicholas A. Mitrovich and Doris M. Mitrovich, *jointly and severally,* in the amount of $37,114.76 . . . ." (Italics added.) This sum was said to include damages, interest, attorney's fees and other costs. The court also issued a memorandum decision wherein it specifically discussed the various contentions of appellant and her husband. The court stated that it rejected the contention that Civil Code section 5123 limited Puritan's right to recover against appellant's separate property. Although appellant and her husband thereafter commenced an appeal, they subsequently dismissed it.

On February 9, 1976, Puritan filed an abstract of judgment with the recorder of Los Angeles County. The filing of a judgment with a county recorder makes that judgment a lien upon all of the debtor's real property within the county where the judgment is recorded. (Code Civ. Proc., § 674.) The next month, Puritan began execution proceedings on certain real property owned by appellant in the City of La Mirada, California.

The present action was filed by appellant in April 1976 with the object of quieting title to the above mentioned property—having it declared free of any lien or other adverse interest. In her complaint, appellant asserted that she is sole owner in fee simple of the subject property; that

---

[1]Appellant was known as Doris M. Mitrovich in the prior proceedings.

she and her former husband had entered a lease agreement with Puritan for the rental of certain restaurant equipment; that the restaurant enterprise was community property; that Puritan obtained judgment against them for the lease, which she asserted was a debt secured by the restaurant enterprise; that the abstract of judgment filed by Puritan affects appellant's land, which is her separate property; that "pursuant to Civil Code § 5123, plaintiff's sole and separate property cannot be held liable for said debt"; and, that the court should declare that the judgment lien which Puritan asserts creates no lien upon her property.

After a hearing, the trial court sustained defendant Puritan's demurrer on the grounds that (1) the complaint failed to state facts sufficient to constitute a cause of action and (2) that the action was barred by the former judgment. In reaching its decision, the court had before it certain documents from the previous action, including the findings of fact and conclusions of law, the memorandum of decision, and the judgment, which the parties had attached to their moving papers. Upon sustaining the demurrer, the court did grant appellant leave to amend. After appellant failed to amend her complaint within the time allowed, the court granted Puritan's motion to dismiss the action.

On appeal, appellant contends that the judgment of dismissal should be reversed. She asserts that the complaint did state a cause of action to quiet title. She also contends that the previous action did not decide the limitations upon the liability of appellant's separate property under Civil Code sections 5121 and 5123; therefore, she urges res judicata is not applicable. We have concluded, however, the prior action was res judicata as to the present proceeding; therefore, the present action is barred.

I

Where a judgment prior to the quiet title action determined the same rights between the same parties as in the quiet title action, that judgment is a defense to the quiet title action. (*Walker* v. *Hansen* (1933) 218 Cal. 619 [24 P.2d 764].) If all of the facts necessary to show that the action is barred are within the complaint or subject to judicial notice, a trial court may properly sustain a general demurrer. (*Legg* v. *United Benefit Life Ins. Co.* (1960) 182 Cal.App.2d 573, 580 [6 Cal.Rptr. 73]; *Kronkright* v. *Gardner* (1973) 31 Cal.App.3d 214, 217-218 [107 Cal.Rptr. 270].)

■ It is now settled that a court may take judicial notice of the official acts or records of any court in this state and any state of the United States. (Evid. Code, § 452.) Pursuant to this authority, a trial court may take notice of the prior judgment in deciding whether to sustain a demurrer based upon res judicata. (*Flores* v. *Arroyo* (1961) 56 Cal.2d 492, 496 [15 Cal.Rptr. 87, 364 P.2d 263]; *Kronkright* v. *Gardner, supra,* at pp. 217-218.) In analyzing a demurrer based upon res judicata the court will take judicial notice of a prior judgment, whether or not pleaded, provided only that (1) the court has been correctly apprised of the judgment, and, (2) the plaintiff is given adequate notice and opportunity to be heard as to the effect of the judgment. (*Flores* v. *Arroyo, supra,* at p. 496; Evid. Code, § 452, subd. (d), § 453.)

In the present case, appellant's complaint specifically alleges and incorporates by reference the title, number and judgment of the prior action. This, by itself, has long been held sufficient to allow the court to consider the prior proceeding in deciding whether it bars the action. (*Weil* v. *Barthel* (1955) 45 Cal.2d 835, 837 [291 P.2d 30].) In addition, Puritan's demurrer, and the declaration of counsel accompanying the demurrer properly invoked judicial notice of the prior action pursuant to Code of Civil Procedure, section 430.70.[2] Hence, the trial court properly sustained the demurrer if facts constituting the defense of res judicata were within the complaint or were subject to judicial notice, and other facts before the court did not vitiate that defense.

## II

■■ It is settled that a final judgment on the merits between the same parties bars a later action upon the same cause of action. The prior judgment determines not only every issue raised in that action, but every issue that might have been raised. (*Olwell* v. *Hopkins* (1946) 28 Cal.2d 147, 152 [168 P.2d 972]; Rest., Judgments, §§ 45(a), 47(a).)

That the prior action was a final judgment, on the merits, as between the same parties has not been contested. Appellant does contend that the judgment rendered in the prior proceeding was upon a different cause of

---

[2]Code of Civil Procedure, section 430.70 states: "When the ground of demurrer is based on a matter of which the court may take judicial notice pursuant to Section 452 or 453 of the Evidence Code, such matter shall be specified in the demurrer, or in the supporting points and authorities for the purpose of invoking such notice, except, as the court may otherwise permit."

action than here asserted; therefore, the former judgment cannot be res judicata in the present action. This contention must be rejected.[3]

Appellant, in essence, urges that the prior action was to determine her personal liability under the contract; whereas the present quiet title action seeks to determine the liability of her separate real property to satisfy the prior judgment. She argues that the liability of her property is limited by section 5123 of the Civil Code, which reads: "(a) The separate property of the wife is not liable for any debt or obligation secured by a mortgage, deed of trust or other obligation secured by a mortgage deed of trust or other hypothecation of the community property which is executed prior to January 1, 1975, unless the wife expressly assents in writing to the liability of her separate property for such debt or obligation." It is asserted that the obligation previously sued upon was secured by community property and that her separate property was not liable for a deficiency resulting from the foreclosure of a security interest in community property. Appellant admits, the resulting judgment in the prior action is not qualified by any stated limitation that it be satisfied only out of community property. Hence, appellant argues that she "should be afforded the opportunity to litigate her separate property's liability for a debt incurred for the benefit of the community."

██ The nature and substance of a cause of action are determined by the right or liability sought to be established or enforced. If the second action is based on the same right or obligation, the cause of action is the same even though different or additional relief is sought. (*Owl Drug Co. v. Bryant* (1953) 115 Cal.App.2d 296, 302 [252 P.2d 69].) ██ Appellant's contention rests upon a false distinction between liability of persons and liability of property. It is true that both Civil Code sections

---

[3]The question whether the separate property of the wife was liable for the debt was not raised until after the trial which took place on May 20, 1974. The case was submitted on briefs to be filed. The defendants then fired their trial lawyer. June 10, 1974, new counsel asked for an extension of time to file the defendants' brief and in this document, for the first time, asserted that the judgment should contain a condition that the wife's separate property is not liable. This theme was expanded in the brief that was eventually filed on June 27, 1974.

The court's memorandum of decision on August 16, 1974, discusses this contention and finds that it has no merit because "a wife who signs a guarantee cannot claim a lack of consideration because the transaction involved her spouse."

On September 26, 1974, defendants asked for special findings, one of which (finding 7) would have been to the effect that the property sold by Puritan was the community property of the parties. On November 8, 1974, there was a hearing with respect to the findings and requested finding number 7 was denied.

The judgment, entered December 18, 1974, does not limit the liability of the wife. Nor, of course, does it expressly say that her liability extends to her separate property.

5121 and 5123 specifically refer to the *liability of a spouse's separate property* for certain types of contractural obligations. Nevertheless, these Civil Code sections do not act directly upon property; nor do they purport to "exempt property from execution," as that phrase is used in Code of Civil Procedure sections 690-690.29. Rather, these code sections act directly upon persons, defining the nature and extent of personal liability for spouses for contractual obligations. Thus, where Civil Code sections 5121 or 5123 operate to limit a party's personal liability, the judgment itself should be "specifically limited with a direction that it be satisfied only out of such separate property . . . as is made liable by [the] section . . . ." (*Credit Bureau of Santa Monica Bay Dist., Inc.* v. *Terranova* (1971) 15 Cal.App.3d 854, 857, 860 [93 Cal.Rptr. 538].) Where such limitation is appropriate, a general unqualified personal judgment would constitute error. (*Id.*) Thus, appellant's assertion that her liability under the lease did not extend to her separate property interests was a matter within the scope of the previously litigated cause of action.

It is clear that by bringing a quiet title action to assert limits upon the liability of her separate property, based on Civil Code, section 5123, appellant is once again attempting to litigate the extent of her *personal* liability under the contract of guarantee. That cause of action was conclusively litigated on its merits by the same parties in the previous Santa Barbara proceeding. As appellant herself admits, she was adjudged jointly and severally liable under that obligation in the amount of $37,114.14. Even if we assume that the prior judgment was incorrect, it is settled that "[a]n erroneous judgment is as conclusive as a correct one." (*Panos* v. *Great Western Packing Co.* (1943) 21 Cal.2d 636, 640 [134 P.2d 242]; *Olwell* v. *Hopkins, supra,* 28 Cal.2d 147, 152.) If, in appellant's opinion, the judgment erroneously failed to fix the proper limits upon her liability, appellant should have appealed from the former judgment upon that ground. Once that judgment became final, however, it could not be collaterally attacked by a quiet title action which sought in essence to subtract from rights which the previous judgment confirmed to Puritan. (*Hamaker* v. *Heffron* (9th Cir. 1945) 148 F.2d 981, 984-985; accord, *Kirkpatrick* v. *Harvey* (1942) 51 Cal.App.2d 170 [124 P.2d 367].)

There is authority for the proposition that courts may refuse to apply res judicata where manifest injustice would result. (*Greenfield* v. *Mather* (1948) 32 Cal.2d 23, 35 [194 P.2d 1]; *In re Marriage of Hight* (1977) 67 Cal.App.3d 498, 502-503 [136 Cal.Rptr. 685]; *Jackson* v. *Jackson* (1967) 253 Cal.App.2d 1026, 1037 [62 Cal.Rptr. 121].) This exception to the general rule of res judicata is very limited, however, and has recently

been subjected to criticism by the Supreme Court in *Slater* v. *Blackwood* (1975) 15 Cal.3d 791, 796 [126 Cal.Rptr. 225, 543 P.2d 593].

In the present case the appellant has failed to demonstrate that any injustice whatever would result from the barring of her quiet title action. True appellant will be adversely affected if her property is subjected to execution; but, of course, respondent Puritan would be adversely affected if it cannot recover upon the deficiency judgment. Adverse consequences alone obviously cannot outweigh the interest in having an end to litigation. The matter which appellant seeks to assert was clearly within the scope of the prior action; appellant had the opportunity to litigate the very limitation on her liability that she now seeks to assert, and apparently did so, as evidenced by the trial judge's discussion of her contention in the memorandum opinion. The fact that only the memorandum opinion explicitly addressed the matter she seeks to raise is not a basis for rejecting res judicata. The judgment and findings in the prior action are entirely consistent with that opinion, which expressly addresses and rejects appellant's contentions on that matter. Appellant, therefore, had ample notice that the trial court had ruled against her on that matter and could have appealed the decision. Hence, to reject res judicata in this case would call into question the finality of a judgment without any corresponding gain. We will not do so.

### III

Even if we assume that which we do not assume—that this quiet title action is based upon a distinct cause of action—it would nevertheless be necessary to determine if the demurrer was properly sustained under the doctrine of collateral estoppel.

Contrary to the general allegations of ownership and adverse claim without right which characterize most complaints to quiet title, the allegations within appellant's complaint are quite specific. Those allegations make clear that her quiet title action is premised basically upon one argument: that appellant's obligation under her guarantee of the lease agreement constituted a "debt hypothecated by community property and that pursuant to Civil Code § 5123, plaintiff's sole and separate property cannot be held liable for said debt." They also show that appellant's above-mentioned argument is the sole basis for her contention that the judgment lien is not applicable to her separate property.

If facts within the complaint or within the scope of judicial notice show that appellant was collaterally estopped from asserting the argument which was the basis of her claim, the complaint was subject to general demurrer because it displayed a defense upon its face. (*Gamboa* v. *Atchison, Topeka & Santa Fe Ry. Co.* (1971) 20 Cal.App.3d 61, 68 [97 Cal.Rptr. 471], [defense of statute of limitations appeared on face of complaint]; *Sargent* v. *Goldberg* (1972) 25 Cal.App.3d 940, 944 [102 Cal.Rptr. 300] [defense of contributory negligence appeared on face of complaint]; *Legg* v. *United Benefit Life Ins. Co., supra,* 182 Cal.App.2d 573, 580 [reference to prior judgment in complaint coupled with judicial notice invoked defense of res judicata].)

Under the doctrine of collateral estoppel, a judgment in a prior action between the same parties operates to preclude relitigation of those issues which were actually litigated and determined in the first action. (*Todhunter* v. *Smith* (1934) 219 Cal. 690, 695 [28 P.2d 916]; *Saunders* v. *New Capital for Small Businesses, Inc.* (1964) 231 Cal.App.2d 324, 330, 333 [41 Cal.Rptr. 703]; *Bleeck* v. *State Board of Optometry* (1971) 18 Cal.App.3d 415, 428-429 [95 Cal.Rptr. 860].) Furthermore, as our Supreme Court has held, "the prior determination of an issue is conclusive in a subsequent suit between the same parties as to that issue and every matter which might have been urged to sustain or defeat its determination." (*Pacific Mut. Life Ins. Co.* v. *McConnell* (1955) 44 Cal.2d 715, 724-725 [285 P.2d 636]; *Sutphin* v. *Speik* (1940) 15 Cal.2d 195, 205 [99 P.2d 652, 101 P.2d 497].)

This does not mean that issues not litigated and determined are binding in a subsequent proceeding on a new cause of action. Rather, it means that once an issue is litigated and determined, it is binding in a subsequent action notwithstanding that a party may have omitted to raise matters for or against it which if asserted might have produced a different outcome. (*Price* v. *Sixth District Agricultural Assn.* (1927) 201 Cal. 502, 511 [258 P. 387].) In the absence of such a limitation, a party could relitigate an issue simply by framing a new theory to attack the prior determination. (*Sutphin* v. *Speik, supra,* at p. 205.) The policy of repose, which is the basis for the doctrine of preclusion, would thereby be frustrated.

The issue of whether appellant was liable under the lease and guarantee was litigated and determined in the prior action. Appellant was found to have guaranteed the lease and was adjudged jointly and severally liable for the default under that obligation. Applying the above

mentioned principles of collateral estoppel, we believe that this determination necessarily concluded any theory that the scope of her liability under that obligation did not extend to her separate property interests. The liability of appellant's separate property interests under the debt was a component of the ultimate issue which the prior action determined: appellant's personal liability as guarantor of the lease. That component bears such a close relationship to the previously determined ultimate issue that asserting it again would operate primarily to undermine the prior determination. Clearly, the appropriate place to raise appellant's argument was in the prior proceeding where the issue of her liability under the lease and guarantee was decided. Even if, as she asserts, she failed to raise the matter then, she is nevertheless precluded from doing so now.

In addition—despite appellant's assertions to the contrary—the facts show that the very matter which appellant now seeks to litigate in the quiet title action was previously considered and determined in the prior action upon the lease. Appellant contends that only the previous judgment and findings may be resorted to for a determination of the issues raised and concluded by that judgment. Appellant urges that since these do not specifically refer to the liability of her separate property interests, she cannot be precluded from raising the matter in a new action. We disagree.

It is settled that evidence extrinsic to the judgment roll may be used to ascertain what issues were determined in the former action. (*Olwell* v. *Hopkins, supra,* 28 Cal.2d 147, 151; *Rynsburger* v. *Dairymen's Fertilizer Coop., Inc.* (1968) 266 Cal.App.2d 269, 276 [72 Cal.Rptr. 102]; *Talman* v. *Talman* (1964) 229 Cal.App.2d 39, 42, 43 [39 Cal.Rptr. 863]; *Tevis* v. *Beigel* (1957) 156 Cal.App.2d 8, 14 [319 P.2d 98].) It is true that the memorandum opinion of a trial court may not be used to impeach its findings and judgment. (*Taormino* v. *Denny* (1970) 1 Cal.3d 679, 684 [83 Cal.Rptr. 359, 463 P.2d 711]; *Estate of Bullock* (1955) 133 Cal.App.2d 542, 549 [284 P.2d 960].) It is nevertheless equally true that the opinion may be used for some purposes, such as explaining the basis of the court's ruling. The courts have so held in cases where they have considered the opinion of the trial court therein in deciding the case on review. (*Wechsler* v. *Capitol Trailer Sales* (1963) 220 Cal.App.2d 252, 262-263 [33 Cal.Rptr. 680]; *Bailey* v. *Fosca Oil Co.* (1960) 180 Cal.App.2d 289, 295 [4 Cal.Rptr. 474]; *Canepa* v. *Sun Pacific, Inc.* (1954) 126 Cal.App.2d 706, 712 [272 P.2d 860].)

It is *Tevis* v. *Beigel, supra,* 156 Cal.App.2d 8, 14, that is dispositive on this point. In *Tevis* the court held that a trial court in one case could consider the oral opinion of the trial court in a previous case in determining, for purposes of res judicata, what matters were decided in the prior case. Indeed, the court in *Tevis* held that it was reversible error for the trial court therein to exclude the oral opinion as evidence of what the court decided. (*Id.* at pp. 14, 15.) It is obvious that a written opinion is no less probative than an oral opinion for the purpose of understanding and interpreting the findings and judgment. Hence, it was proper for the trial court herein to refer to the memorandum opinion for that purpose.

Respondent requested that the trial court herein take judicial notice of the memorandum opinion of the trial court in the prior action upon the lease, which states in relevant part: "With respect to the contentions that Civil Code § 5123 limits the ability of Puritan Leasing Company to recover from Doris M. Mitrovich, it is the finding of this Court that Civil Code § 5121 controls, which section provides that the separate property of a spouse is liable for the debts of such spouse contracted during the course of the marriage. Counsel for defendants has cited no cases supporting his interpretation of Civil Code § 5123 and as noted in *Hammond Lumber Co.* v. *Danzinger,* 2 CA 2d 197; *In Re Setrakian's Estate,* 178 CA 2d 833; and *Garthofner* v. *Edmonds,* 74 CA 2d 15, a wife who signs a guarantee cannot claim a lack of consideration because the transaction involved her spouse; further these authorities illustrate that a wife is liable to the same extent as though she were a stranger to the other contracting party (her husband), since it is the law of this state that a married woman may contract as freely as though she were unmarried and her separate property may be reached to secure the performance of a married woman's contract."

The opinion indicates that counsel for appellant (defendant in the prior action) did argue their "contention" that Civil Code section 5123 limits the ability of Puritan Leasing Company to recover from appellant, although he apparently marshalled no case law in support of that contention. The trial judge's rejection of that argument in his written opinion is entirely consistent with both the findings and the judgment. The court specifically found that "The lease agreements . . . were duly executed by the parties and the leases were guaranteed by Doris M. Mitrovich." Interpreting this finding in light of the memorandum opinion, it is clear that the trial court in the previous action found that appellant had personally guaranteed the lease thereby subjecting herself

to general liability. The memorandum opinion also aids in interpreting the judgment. It indicates that the unqualified money judgment against appellant reflected the trial court's considered rejection of her interpretation of Civil Code section 5123. Where that code section operates to circumscribe a party's liability, a general unqualified personal judgment would be erroneous (*Credit Bureau of Santa Monica Bay Dist., Inc.* v. *Terranova, supra,* 15 Cal.App.3d 856, 860.) Hence, if appellant believed that the trial court either incorrectly applied or refused to apply sections 5123 or 5121, then she should have appealed from the judgment upon that issue. Once that judgment became final, appellant was precluded from raising the matter anew in a subsequent action.

## IV

Appellant asserts that the court below should have exercised its discretionary power to reject the doctrines of res judicata and collateral estoppel as defenses in this case because of considerations of fairness and policy. We have found, however, no circumstances which would call the application of either doctrine into question.

It is true that there are limitations on the application of collateral estoppel to questions of law. The distinction between issues of fact and issues of law is frequently artificial. However, even if we conceded that the issue sought to be precluded was one of law, the other circumstances necessary to justify a refusal to apply collateral estoppel would nevertheless be absent. This is not a case where the application of collateral estoppel would result in injustice; in the prior case appellant had and utilized her opportunity to litigate the very matter she now seeks to raise. Nor is this a case in which the application of collateral estoppel would allow a party who has previously won on an issue to obtain an unfair advantage as against third persons in the administration of the law. (*Commissioner* v. *Sunnen* (1948) 333 U.S. 591, 597-599 [92 L.Ed. 898, 905-907, 68 S.Ct. 715]; *Louis Stores, Inc.* v. *Department of Alcoholic Beverage Control* (1962) 57 Cal.2d 749, 757-758 [22 Cal.Rptr. 14, 371 P.2d 758].) Nor is this a case where the issue sought to be relitigated arises out of a different subject matter or transaction. (*Chern* v. *Bank of America* (1976) 15 Cal.3d 866, 872 [127 Cal.Rptr. 110, 544 P.2d 1310]; *Louis Stores, Inc.* v. *Department of Alcoholic Beverage Control, supra,* at pp. 757-758.) On the contrary, appellant seeks to relitigate her liability for the same default of the same lease and guarantee as against the same party. Further, this case does not involve a matter of intense public interest, as where the dispute concerns an industry requiring close

supervision. (*Chern* v. *Bank of America, supra,* at pp. 872-873; *Louis Stores, Inc.* v. *Department of Alcoholic Beverage Control, supra,* at pp. 757-758; *Bleeck* v. *State Board of Optometry, supra,* 18 Cal.App.3d 415, 430.) Nor does there appear to be any additional factor that would have required the court below to reject application of collateral estoppel.

We therefore conclude that the order of the trial court sustaining respondent's demurrer to the complaint must be sustained.

The judgment is affirmed.

Hastings, J., concurred.

**KAUS, P. J.**—I concur in the result, but since I have lingering doubts about the court's res judicata rationale, I would simply add my personal opinion that appellant labors under a mistaken view concerning the impact of section 5123 of the Civil Code.

Amazingly enough, the section has never really been interpreted. It is a successor statute to former section 171b, the chief purpose of which was "to prevent liability of the wife's separate property in cases in which she had to join with the husband in executing an instrument encumbering the community *real property.*" (Witkin, Summary of California Law (8th ed. 1974) p. 5170.) Admittedly the section goes further in that it also covers secured transactions in personal property where the wife's signature is not required. Nevertheless, I do not believe the statute was ever intended to protect wives who, as appellant, guarantee a community obligation secured by a security interest of community property, by a separate instrument. Such a case squarely falls under section 5121 of the Civil Code to the effect that "the separate property of the wife is liable for her own debts contracted before or after her marriage, . . ."