670 P.2d 414

**In the Matter of the ESTATE OF Goldie C. BROWN, deceased:**

**BURCH & CRACCHIOLO, P.A.; Rupert David Chrisman; Beatrice Chrisman; Robert Lee Chrisman; Rupert David Chrisman, Jr.; Veda Roberts; Barney F. Leonard; Marjorie Leonard Brandon; Ada Johnson; Thomas J. Chrisman and Jean Leonard Elder, Interested Parties-Appellants,**

v.

**FIRST NATIONAL BANK OF ARIZONA, Successor Personal Representative-Appellee.**

No. 1 CA–CIV 5962.

Court of Appeals of Arizona, Division 1, Department A.

May 19, 1983.

Rehearing Denied June 21, 1983.

Review Denied Sept. 20, 1983.

**310**

Burch & Cracchiolo, P.A. by Jerry L. Cochran, Phoenix, for interested parties-appellants.

Allen, McClennen & Fels by Robert H. Allen, Phoenix, for successor personal representative-appellee.

## OPINION

KLEINSCHMIDT, Judge.

This case arises out of the probate of the estate of Goldie C. Brown, who died testate on April 22, 1971. It presents the question of whether the Arizona probate code permits a court to consider an award of attorney's fees from the assets of the estate in favor of interested parties, other than the personal representative, who retain counsel and through the actions of counsel confer a benefit upon the entire estate. Although the case law of Arizona has consistently held that the probate court has no jurisdiction to allow attorney's fees to be paid from the assets of the estate to any attorney other than one hired by the personal representative, we hold that a 1973 amendment to the probate code has broadened the jurisdiction of the probate court so that the court does have the power to consider and decide whether or not such payment should be allowed.

The facts that give rise to the question are as follows. Virginia Hash, a member of the State Bar of Arizona, was appointed pursuant to the will of Goldie C. Brown as personal representative of the estate. The principal asset of the estate consisted of land of considerable value in Maricopa County. The will bestowed two outright gifts totaling 20 percent of the assets. The remaining 80 percent of the estate was divided into four separate trusts for individuals who were granted life estates. As to each trust the net income was to be paid to the life beneficiaries in convenient installments not less than quarterly.

No accounting was presented by the personal representative until 1975 when a first accounting for the period from Mrs. Brown's death through May 31, 1974, was filed with the court. Although the Chrismans, life beneficiaries of one of the trusts, objected to the first accounting no hearing was held on the matter. Despite requests from the life beneficiaries that part of the land be sold so that the partial distributions envisioned by the will could be made, no such sale was forthcoming. There is evidence in the record which supports the conclusion that during the period in question the market for land was depressed, that the personal representative was trying to effect a sale and that she candidly answered the inquiries of beneficiaries regarding the probate proceedings.

In 1976 the Chrismans hired the law firm of Burch & Cracchiolo, P.A. to investigate the matter and in January of 1977 through these attorneys the Chrismans objected to the personal representative's accounting and petitioned to determine the amount of a creditor's claim which the personal representative had timely filed on behalf of herself and Hash, Cantor & Tomanek, the law firm of which she was a member. The creditor's claim in question arose out of litigation in Maricopa County Cause No. C–205809. The efforts of Virginia Hash and her law firm in that action confirmed in the estate a sizeable portion of the land which constituted its principal asset. The creditor's claim filed by the firm of Hash, Cantor & Tomanek sought "one-third of any amount recovered in excess of $150,-000" in Cause No. C–205809.

In August of 1977 a motion for summary judgment in favor of the beneficiaries of the estate was granted with respect to the creditor's claim filed by Hash, Cantor and Tomanek, and this judgment was appealed to the court of appeals. While the appeal was pending and following hearings conducted in June and August of 1978, the probate court found that the removal of Virginia Hash as personal representative would be in the best interests of the estate and entered an order to that effect. The First National Bank of Arizona was appointed as successor personal representative. We will hereafter refer to the successor personal representative as "the bank."

Thereafter, in March of 1980, the creditor's claim filed by Virginia Hash was settled with a savings to the estate of approximately $2 million. The settlement was approved by the court. Burch & Cracchiolo, P.A. expended in excess of 2,000 hours in their endeavors for the Chrismans and other beneficiaries who had joined in the action and they subsequently filed a claim against the estate on behalf of their clients for attorney's fees. The probate court granted a motion for judgment on the pleadings in favor of the estate and against Burch & Cracchiolo. This appeal followed.

It has long been the rule in Arizona that attorney's fees are not payable from the assets of the estate except for lawyers hired by the personal representative. The inception of the rule dates back to the case of *In re Balke's Estate*, 68 Ariz. 373, 206 P.2d 732 (1949), which squarely addressed the issue. In *Balke* the court noted that while there was authority both ways the better rule was that no such payments could be made because to allow payment would make the estate liable for expenses and costs which could not be controlled or measured by an administrator or executor and would invite confusion and waste in the settlement of estates. The court reasoned that § 38–

1402, A.C.A., (1939) (the predecessor of A.R.S. § 14–3720 [1]) which read:

Allowed expenses of administration— Attorney's Fees—.... He [the executor] shall also be allowed reasonable fees paid or contracted to be paid to attorneys at law for services to him, and an attorney who has rendered such services may apply to the court for an allowance as compensation therefor. Upon the hearing, a reasonable allowance shall be made, and the court shall order the payment thereof out of funds of the estate.

impliedly limits the payment of attorney's fees to those attorneys who are employed by the executor. In so holding, the supreme court emphasized the principle that the administration of a decedent's estate is purely statutory and that the procedure outlined in the statutes is controlling.

*Balke* was reaffirmed by *Pintek v. Superior Court,* 81 Ariz. 255, 304 P.2d 392 (1956) in which the supreme court noted that since the statutes provided the only authority for payment of attorney's fees by an executor the probate court was *without jurisdiction* to authorize fees for counsel hired by anyone other than the executor. In still another case, *Great Western Bank and Trust v. Myers,* 109 Ariz. 542, 514 P.2d 463 (1973), the court reaffirmed the rule of *Balke* with the observation that, "Any other system leaves the estate open to multiple claims by all who assert to have benefited the estate." 109 Ariz. at 544, 514 P.2d at 465.

The appellants, while acknowledging that *Balke* and its successors were once the law, say that the revision of the Arizona Probate Code that became effective in 1974 renders the prior case law on this point inapplicable. They point out, citing *Pintek,* that before the extensive amendment of the probate code the probate court was a court of limited jurisdiction with limited power to perform only those acts expressly permitted to it by statute. All of this, they argue, was changed by the adoption of A.R.S. § 14–1103, which reads as follows:

Supplementary general principles of law applicable.

Unless displaced by the particular provisions of this title, the principles of law and equity supplement its provisions.

■ We agree that the provisions of A.R.S. § 14–1103 expand the jurisdiction of the probate court and confer power upon it that it did not have when *Balke* and its successors were decided. Further, we agree that it is a general rule of equity long recognized in Arizona that a person or persons who employ attorneys for the preservation of a common fund may be entitled to have their attorney's fees paid out of that fund. *Steinfeld v. Zeckendorf,* 15 Ariz. 335, 138 P. 1044 (1914), *affirmed,* 239 U.S. 26, 36 S.Ct. 14, 60 L.Ed. 125 (1915). This, the so-called common fund theory of recovery, is a recognized exception to the rule that attorney's fees in Arizona are allowed pursuant only to statute or contract. *Roe v. Arizona Board of Regents,* 23 Ariz.App. 477, 534 P.2d 285 (1975), *vacated on other grounds,* 113 Ariz. 178, 549 P.2d 150 (1976).

While under the old statute the provision, now A.R.S. § 14–3720, which allows a personal representative to pay the fees of the attorney he hires from the assets of the estate, may have been an implied limitation on the payment of any other attorney's fees, we do not believe that such an implication can be said to displace the general rule of equity relating to payment upon the basis of the common fund theory when it appears that the legislature clearly intended to broaden the probate court's powers. The adoption of A.R.S. § 14–1103 brings it within the power of the probate court to consider the application of the common fund theory of recovery.

The successor personal representative's primary argument as to why the appellants should not prevail is its contention that the rule of *In re Balke's Estate* was reaffirmed following the adoption of the new probate code in the case of *Sanders v. Boyer,* 126

---

1. A.R.S. § 14–3720 provides:

    If any personal representative or person nominated as personal representative defends or prosecutes any proceeding in good faith, whether successful or not he is entitled to receive from the estate his necessary expenses and disbursements including reasonable attorneys' fees incurred.

Ariz. 235, 613 P.2d 1291 (App.1980). But for one factor we would agree that *Sanders v. Boyer* is controlling, especially in view of the fact that it involved a personal representative who, as a residuary legatee, would have derived a personal benefit had he prevailed in his attempts to have another legatee's taxes paid from that legatee's devise instead of from the residue of the estate. *Sanders v. Boyer* does not apply though for the simple reason that the appellants in that case never raised the issue of whether the jurisdiction of the probate court had been expanded by the adoption of A.R.S. § 14–1103. The court in *Sanders* did not consider that question and did not purport to decide it.

█ This brings us to a consideration of whether, for reasons of policy, we should adhere to the rule of *Balke* regardless of the expansion of the probate court's jurisdiction to apply the general rules of equity. The question is whether it is better to expose the estate to liability for expenses and costs not directly controlled by the administrator and thus invite confusion and waste in return for allowing those who safeguard the assets of the estate to recover their expenses and fees, or whether the certainty and simplicity of the *Balke* rule is preferable even though it may favor those beneficiaries who take no action over those who act for the benefit of all. We think that where the personal representative has a conflict of interest with the estate so that with respect to some claim of the personal representative the estate is virtually unrepresented, it is preferable to allow the court to consider whether those who in fact confer a benefit on the common fund should recover fees expended in the effort to do so. Whether and to what extent such fees should be allowed is a question best left to the probate court to decide in the sound exercise of its discretion on a case-by-case basis. We emphasize that it is critical to our decision that the personal representative had a direct conflict of interest with the estate.

█ The foregoing considerations and the principle that we state does not, however, dispose of this case. The appellee points out that there is an exception to the so-called common benefit theory of recovery and suggests that it applies in this case. Citing *In re Bullock's Estate,* 133 Ca.App.2d 542, 284 P.2d 960 (1955), the bank argues that the common fund rule does not apply when other primary beneficiaries of an estate are represented by attorneys who rendered services substantially the same as those rendered by the beneficiaries petitioning for the allowance of attorney fees. In *Bullock* all of the parties interested in the estate had retained lawyers in the same litigation. Another California court applied the same exception where there were multiple beneficiaries of the fund and all—*or substantially all*—were represented by various counsel. In *Estate of Korthe,* 9 Cal. App.3d 572, 88 Cal.Rptr. 465 (1970), the court, citing *Estate of Stauffer,* 53 Cal.2d 124, 132, 346 P.2d 748, 752 (1959), stated the reason for the common fund theory as follows:

> [F]airness to the successful litigant, who might otherwise receive no benefit because his recovery might be consumed by the expenses; correlative prevention of an unfair advantage to the others who are entitled to share in the fund and who should bear their share of the burden of its recovery; encouragement of the attorney for the successful litigant, who will be more willing to undertake and diligently prosecute proper litigation for the protection or recovery of the fund if he is assured that he will be promptly and directly compensated should his efforts be successful.

88 Cal.Rptr. at 467. These reasons, it noted, largely fail where all of the beneficiaries seek counsel and join in the litigation. We agree that under such circumstances all claimants might well be denied recovery but we believe that such should merely be a factor for the court's consideration and not an ironclad exception to recovery under the common fund theory.

█ In this case Burch & Cracchiolo represented a total of 10 beneficiaries with an approximate 47 percent interest in the estate. The firm of Kennedy, Minshew,

Campbell, Cain & Seidlits, of Sherman, Texas, commencing in 1972, represented three beneficiaries of the estate who together take a 40 percent share. The Kennedy firm originally filed objections to the Burch & Cracchiolo claim. The appendix to appellants' reply brief contains a copy of a letter from the Kennedy firm to Burch & Cracchiolo dated March 11, 1981, purporting to withdraw the objections to Burch & Cracchiolo's claim and forwarding an amended petition for attorney's fees in which Burch & Cracchiolo, P.A. and Kennedy, Minshew, Campbell & Cain, P.C. jointly request an award of fees from the assets of the estate. Neither this letter nor the amended petition for attorney's fees are a part of the record and we therefore do not consider them. The record does, however, show that after the probate court had initially ruled against the appellant and denied an award of fees from the assets of the estate, the appellants asked for a clarification of the ruling to determine whether the probate court based its judgment upon the fact that the Kennedy firm had objected to the claim or instead had based its decision on its opinion that it did not have jurisdiction to make the award. The probate court obliged appellants with an amended order to the effect that the ruling was based upon the belief that the court lacked jurisdiction to enter the order.

We do not hold that as a matter of fact and law either Burch & Cracchiolo or the Kennedy firm are entitled to an award of fees in this case. We pass no judgment on whether, under all the attendant facts and circumstances of this case including the relatively large value of the assets of the estate, representation of 87 percent of the interest in the estate is so substantial as to bring the doctrine of *Bullock* and *Korthe* into play. What we do hold is that the probate court has jurisdiction, upon a consideration of all of the facts and equities, to award such fees from the assets of the estate in the event that it feels, in the proper exercise of its discretion, that such fees are appropriate and justified. In arriving at a decision on this issue the probate court should take care to scrutinize the rec-

ord to make certain that no award is made for activity that would duplicate the legitimate efforts of the original personal representative. Further, if the record below ultimately establishes that the Kennedy firm has joined in an amended claim the court must take special care to see that no award which would allow for a duplication of effort by the two groups of claimants and their counsel is allowed. An award to one or both firms may be entirely proper. On the other hand, depending upon what position the successor trustee and the other beneficiaries may take and what the evidence may show, the probate court may find that the principles of equity in this case do not require an award of fees from the assets of the estate to anyone.

The beneficiaries represented by Burch & Cracchiolo agreed to pay a contingent fee in the amount of one-third of the assets recovered or preserved. While the beneficiaries may be bound by this contract the probate court is not. If, under all of the circumstances of the case, it is deemed appropriate to award a lesser amount from the assets of the estate the probate court has complete discretion in that regard. Nor is the situation made too complicated by the fact that one beneficiary appeared in the litigation in propria persona. While no award of fees would be appropriate to one who made such an appearance there is no reason why the probate court may not consider, assuming a claim is made, whether or not to award costs incurred by such an individual if it finds that his efforts furthered the preservation of the assets of the estate.

The judgment of the probate court is reversed and this case is remanded for proceedings consistent with this opinion.

CORCORAN and CONTRERAS, JJ., concur.