[No. B024300. Second Dist., Div. Five. Feb. 10, 1988.]

CLARENCE J. WITTMAN et al., Cross-complainants and
Appellants, v.
CHRYSLER CORPORATION, Cross-defendant and Respondent.

**COUNSEL**

Vars, Pave, McCord & Freedman, Sherry L. Kerdman and Aaron J. Weissman for Cross-complainants and Appellants.

McCutchen, Black, Verleger & Shea, Franklin H. Wilson and Stephen R. Morris for Cross-defendant and Respondent.

## OPINION

**BOREN, J.**—Clarence and Joyce Wittman appeal from the dismissal of their cross-complaint against respondent Chrysler Corporation (Chrysler). This dismissal was based on the trial court's determination that the Wittmans were collaterally estopped from pursuing their cross-claims after they had consented to a judgment in the main action brought by Chrysler Credit Corporation (Chrysler Credit).

### FACTS

The main action was initiated by Chrysler Credit against the Wittmans and the car dealership which they operated, Monte Verde Motors, Inc.[1] Chrysler Credit asserted four causes of action in its complaint. The first two causes of action were against Monte Verde Motors and sought possession of personal property pledged as security for Chrysler Credit's financing of the dealership's inventory, as well as damages from the sale of the secured property. The remaining causes of action were against the Wittmans on their written guaranty of Monte Verde's debts and on a deed of trust securing the guaranty, and sought a judicial foreclosure on the grounds that the Wittmans were responsible as guarantors for Monte Verde Motors' default on its obligations.

The defendants answered, denying most of the substantive allegations in the complaint. As affirmative defenses, the defendants alleged, among other things, a failure of consideration; failure to mitigate damages by overextending credit to Monte Verde; that the written guaranty was obtained through the fraudulent misrepresentations of Chrysler Credit; and that Chrysler Credit concealed facts about Monte Verde's credit line from the Wittmans, causing them to execute the guaranty of the dealership's debts to their detriment.

The Wittmans also cross-complained against both Chrysler and Chrysler Credit. They alleged that Chrysler misrepresented its economic soundness

---

[1] Monte Verde Motors is not a party to this appeal. The claims against it and its cross-complaint were dismissed at the outset of the trial after the court took judicial notice that the corporation had been suspended by the Secretary of State pursuant to Revenue and Taxation Code section 23302, and had thereby lost its capacity to maintain and defend lawsuits. Chrysler Credit is also not a party to this appeal.

and the marketability of its cars, thereby inducing the Wittmans to open the Monte Verde Motors dealership and to subsequently guarantee its debts, and causing them to incur a loss of time and money when the dealership went out of business. Against Chrysler Credit, the Wittmans complained of an undisclosed, overextended credit line which induced the dealership to buy an excessive number of automobiles from Chrysler and caused the Wittmans to have to execute a guaranty of the dealership's obligations. The Wittmans alleged that both Chrysler and Chrysler Credit acted negligently in failing to advise them that the dealership's credit line was overextended and that Chrysler was in poor financial condition, and in continuing to ship and finance automobiles that the dealership was unable to sell. Finally, they alleged that Chrysler and Chrysler Credit conspired together to do the things alleged in the preceding causes of action for their own benefit, causing the dealership to go out of business and the Wittmans to become obligated on their personal guaranty.[2]

On the first day of trial, in December 1985, the court ordered bifurcation of the legal and equitable issues in the case, and proceeded immediately to the judicial foreclosure aspect of the main action. The court observed at the outset that all issues relating to the judicial foreclosure would be before it, including any affirmative defenses, and that any findings it made would be res judicata. Specifically, it noted that if the Wittmans asserted fraud as a defense to the judicial foreclosure, factual issues relating to the fraud would need to be raised at that point. In an unsuccessful attempt to avoid a factual determination of the fraud issues involving Chrysler, the Wittmans then dismissed their cross-complaint against Chrysler Credit.

Opening arguments were made, and witnesses were called to testify in the judicial foreclosure portion of the trial. Chrysler Credit employees familiar with the Monte Verde Motors dealership were called to testify. These employees answered questions about the manner in which the dealership and a credit line were established, how the dealership defaulted on its obligations, apparent mismanagement by the Wittmans, and the liquidation of the dealership's inventory. Clarence Wittman then testified about the dealership's credit line, Chrysler Credit's representations that the Wittmans would be notified if the credit line were exceeded, Chrysler's representations about projected sales and profits, the Wittmans' reliance on these representations, and how the credit line was in fact exceeded without notification. Counsel for Chrysler was present throughout these proceedings, but did not actively participate in them.

---

[2] The causes of action asserted by Monte Verde alone do not concern us on this appeal because the dealership is not a party.

After three days of testimony, counsel for the Wittmans unexpectedly moved to withdraw their answer, to admit all material allegations in Chrysler Credit's complaint, and for the entry of judgment against the Wittmans for $309,980.25, plus attorney's fees. The court then quizzed Clarence Wittman to verify that he understood the significance of the consent judgment. He indicated that he had fully discussed the matter with his attorneys, and expressed his belief that the consent judgment in favor of Chrysler Credit would not preclude him from proceeding against Chrysler on his cross-complaint. The court responded by noting that it did not know if the judgment would preclude a later proceeding, and that it could not advise Wittman on that issue.

In January 1986, Chrysler brought a motion to dismiss the Wittmans' cross-complaint on the grounds that further proceedings in the case were barred by the doctrine of res judicata following entry of the consent judgment. In opposition, the Wittmans argued that their claims against Chrysler were not barred, because the fraud issues raised in the cross-complaint had not yet been litigated. A hearing was held on the motion on March 11, 1986, at which time the trial court requested supplemental briefing.

The court granted Chrysler's motion to dismiss on August 12, 1986, after finding that all the claims asserted in the Wittmans' cross-complaint could have been raised by them as defenses in the main action on Chrysler Credit's complaint. The court concluded that the Wittmans were collaterally estopped from further litigating their claims. The judgment dismissing the cross-complaint with prejudice was entered on September 3, 1986.

## DISCUSSION

1. *Matters Which Were Within the Scope of the Main Action for Judicial Foreclosure*

In the portion of the main action which was tried to the court, Chrysler Credit sought an adjudication of its right to foreclose upon a deed of trust executed by the Wittmans. The sole purpose of the deed of trust was to secure the obligations of the Wittmans under the continuing guaranty dated February 6, 1979.

The defense of fraud may be asserted in a judicial foreclosure proceeding and, if such a defense is successfully proved, provides a proper

ground for the trial court to rescind the trust deed and refuse to apply it to a debt. (*Security-First Nat. Bank v. Earp* (1942) 19 Cal.2d 774, 776-778 [122 P.2d 900]; *Dryer v. Dryer* (1964) 231 Cal.App.2d 441, 447 [41 Cal.Rptr. 839].) " 'Here, what is termed a foreclosure suit is only a proceeding for the legal determination of the existence of the lien, the ascertainment of its extent, and the subjection to sale of the estate pledged for its satisfaction. Upon the validity and extent of that lien the owner of the estate, whether mortgagor or his grantee has a right to be heard, and no valid decree for the sale of the estate can pass until this right has been afforded to him.' " (*Dobbins v. Economic Gas Co.* (1920) 182 Cal. 616, 624 [189 P. 1073], quoting *Boggs v. Fowler* (1860) 16 Cal. 559.)

■ Thus, the Wittmans had a right to argue that the deed of trust upon which Chrysler Credit sought to foreclose was fraudulently obtained and could not be applied to the Wittmans' debt under the continuing guaranty. The trial court correctly pointed out to the Wittmans that all affirmative defenses, including the defense of fraud, were before the court during the judicial foreclosure portion of the proceedings, and warned of the res judicata effect of any findings on the issue of the validity of the deed.

The Wittmans took the position in their amended answer to the complaint that their obligations under the continuing guaranty had been fraudulently obtained. Witnesses were called who were qualified to testify about the purported misrepresentations which ultimately induced the Wittmans to execute the guaranty and trust deed. And, in fact, some evidence was adduced regarding the representations that were made to the Wittmans.

Yet the Wittmans chose not to pursue their fraud defense to a final conclusion at trial even though it provided a ground for rescinding the trust deed. Instead, they chose to withdraw their answer, admit all the material allegations contained in the complaint and consent to a judgment against them. By so doing, they necessarily admitted the validity of the instruments under which Chrysler Credit sought to foreclose and which the Wittmans had previously alleged were obtained by fraud.

2. *The Impact on the Wittmans' Cross-complaint of the Judgment by Consent*

■ Under traditional rules of res judicata, a party may be barred ("collaterally estopped") from relitigating issues that were previously adjudicated in an earlier proceeding. In California, this bar to relitigation is not

limited solely to participants of the earlier proceeding. In *Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807 [122 P.2d 892], our Supreme Court established that a stranger may assert the bar *against* a party to the earlier proceeding who later seeks to relitigate identical issues which were the subject of the final decision against him. For purposes of determining whether particular issues were previously decided in an earlier action, the "entry of the consent judgment must be given a res judicata effect in a subsequent action, barring not only the reopening of the original controversy, but also subsequent litigation of all issues which were or could have been raised in the original suit." (*Gates* v. *Superior Court* (1986) 178 Cal.App.3d 301, 311 [223 Cal.Rptr. 678]).

In short, once an issue is raised and determined after a trial on the merits or by a consent judgment, that determination is binding in a subsequent action notwithstanding that a party may have failed to raise arguments against it which, if asserted, might have produced a different outcome. (See *Sutphin* v. *Speik* (1940) 15 Cal.2d 195, 203 [99 P.2d 652]; *Carroll* v. *Puritan Leasing Co.* (1978) 77 Cal.App.3d 481, 490 [143 Cal.Rptr. 772].)

In this case, as we noted above, the validity of the trust deed was at issue in the main action, as was the issue of fraud which was tendered by the Wittmans' answer to the complaint. The Wittmans were legally entitled to fully litigate the invalidity of the debt instruments and the trial court stated as much at the outset of the trial. For whatever reasons, whether strategic or personal, the Wittmans elected to abandon their defenses to the judicial foreclosure proceedings, and to admit the existence and by implication the validity of the instruments alleged in the complaint. By consenting to a final judgment entered under the auspices of those instruments, the Wittmans resolved the fraud issue (as it relates to their guaranty and trust deed) against themselves. Consequently, they cannot now complain that these debt instruments were obtained by Chrysler's fraud and/or a fraudulent conspiracy between Chrysler and Chrysler Credit, because this would disturb the repose of the previously established binding judicial determination that these instruments were legally enforceable and properly foreclosed upon. The Wittmans may not claim damages for being induced to execute agreements that they may have been able to rescind after a trial.

The Supreme Court in *Henderson* v. *Miglietta* (1928) 206 Cal. 125 [273 P. 581] described a case analogous to the one at bar. There, the plaintiff in a first action brought an equitable action to establish rightful possession of certain real property he had acquired in a foreclosure sale. The defendants answered and cross-complained, alleging fraud. The fraud issues were

decided against the defendants in the main action, and that judgment became final. The losing parties then instituted a second action in which they again alleged fraud and misrepresentation to have been the inducement for the execution of the deed of trust. The Supreme Court decided that the second action could not be maintained because the former equitable action was res judicata on the issue of fraud.[3]

We conclude that the Wittmans are collaterally estopped from relitigating any issues relating to the validity of the guaranty and trust deed, including any issue of fraud, misrepresentation, or other affirmative defense that could have produced a different outcome in the main action. We find that there are no circumstances here which create an injustice to the Wittmans because they voluntarily conceded the validity of the debt instruments which they now attack as being fraudulently induced. (See *Carroll* v. *Puritan Leasing Co., supra,* 77 Cal.App.3d at p. 493.)

In their brief (as well as in the trial court), the Wittmans have hinted at fraud by Chrysler which induced them to execute "completely different contracts" (other than the guaranty and trust deed) which resulted in "a different set of damages to the Wittmans." It may well be that these other contracts, none of which are specified in the cross-complaint, provide an independent ground for the Wittmans' claim of fraudulent inducement. However, the allegations of the cross-complaint seem to suggest that Chrysler and Chrysler Credit made certain misrepresentations which induced the Wittmans to open the dealership and eventually to guarantee its debts and execute the trust deed. The trial court was apparently unable to separate the various fraud claims relating to the trust deed from other fraud claims purportedly relating to different contracts which is why it found that *all* the Wittmans' claims were barred. (See *Tonini* v. *Raccoon Straits Land Co.* (1968) 261 Cal.App.2d 105, 111 [67 Cal.Rptr. 719].) We are likewise unable on this record to segregate those of the Wittmans' fraud claims which are unrelated to the debt instruments. Naturally, the Wittmans are free to try to state a claim seeking fraud damages unrelated to the guaranty and trust deed damages which have already been determined against them.

---

[3] Our independent research also uncovered the case of *Sawyer* v. *First City Financial Corp.* (1981) 124 Cal.App.3d 390 [177 Cal.Rptr. 398] which, though it has some factual similarities, is distinguishable from this case. In the first action (*Sawyer I*), the plaintiffs sought to recover on certain loan documents and a trust deed. The plaintiffs also sought to collect on the loan documents in *Sawyer II,* but highlighted tortious conduct such as fraud and conspiracy. Because there was no contention of fraud in *Sawyer I* that might have invalidated the documents, the Court of Appeal allowed *Sawyer II* to proceed. (*Id.* at pp. 402-403.) Brushing aside any doubts we might have about the correctness of the *Sawyer* court's reasoning, the case is distinguishable because, here, the issue of fraud *was* tendered by the Wittmans' answer, and they had an opportunity to litigate the issue in the main action.

## Disposition

The judgment is affirmed.

Feinerman, P. J., and Ashby, J., concurred.

A petition for a rehearing was denied March 11, 1988, and appellants' petition for review by the Supreme Court was denied May 18, 1988.