Filed 10/3/18

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| SARAH L. KERLEY, as Conservator and Co-administrator, etc., <br><br>     Plaintiff and Respondent, <br><br>     v. <br><br> MARCIE ANN WEBER, <br><br>     Defendant and Appellant. | B282202, B283256 <br><br> (Los Angeles County <br> Super. Ct. No. YS024039 <br> & BP097749) |


APPEALS from a judgment and an order of the Superior Court of Los Angeles County.  Stuart M. Rice and William A. MacLaughlin, Judges.  Affirmed in part, reversed in part, and remanded with directions.

Haney & Young, Gregory L. Young and Steven H. Haney for Defendant and Appellant.

Hill, Farrer & Burrill, Julia L. Birkel, Dean E. Dennis, and Clayton J. Hix for Plaintiff and Respondent.

_____

Marcie Ann Weber appeals from a judgment and an order in two related actions.[1] Both actions concern Weber's conduct that resulted in a conviction for theft from an elder or dependent adult in April 2010. That case (the Criminal Action) was the subject of a prior appeal in this court. (*People v. Weber* (Oct. 4, 2013) No. B244008, 2013 Cal.App. Unpub. LEXIS 7156, modified October 30, 2013, 2013 Cal.App. Unpub. LEXIS 7844 (*Weber*).)

Weber's victim was an elderly woman, Philippa Johnston, who died before the end of the criminal trial. Respondent Sarah L. Kerley, Johnston's conservator and the co-administrator of her estate, filed the two actions underlying this consolidated appeal.[2] In one action (the Probate Action, Superior Court No. BP097749), Kerley filed a petition under Probate Code section 850 et seq. seeking civil damages against Weber.[3] In the other action (the Restitution Action, Superior Court No. YS024039), Kerley obtained a judgment based on the $700,000 restitution award in the Criminal Action (the Restitution Judgment).

In the Probate Action, Weber appeals from the judgment, which awarded damages equal to twice the amount of the restitution award (i.e., $1.4 million) under section 859. In the Restitution Action, Weber appeals from an order for the sale of a residence to satisfy the Restitution Judgment.

---

[1] We ordered the appeals consolidated for purposes of oral argument and decision.

[2] We therefore refer to Kerley in her representative capacity as the respondent.

[3] Subsequent undesignated statutory references are to the Probate Code.

Although the two actions are separate, Weber makes duplicative and overlapping arguments in each appeal. She argues that: (1) the trial court in the Probate Action erred in entering judgment based upon estoppel theories without permitting a trial on the actual amount of Johnston's loss; (2) the court in the Probate Action erred in concluding that double damages were permitted under section 859 based upon Weber's criminal conviction without a separate finding of bad faith; (3) the double damages award in the Probate Action should have taken account of sums that Weber had already paid in restitution; and (4) restitution payments that Weber made before the restitution award was reduced to a judgment should have been credited to the principal amount of the restitution amount rather than to accumulated prejudgment interest.

We reject all of these arguments except the last. Pursuant to the terms of a stipulation concerning the amount of restitution in the Criminal Action, Weber's prejudgment restitution payments should have been credited against principal rather than interest. However, even after adjusting the remaining principal on the Restitution Judgment to account for prejudgment payments, Weber apparently still owes a substantial sum.

We therefore remand for the trial court in the Restitution Action to calculate the amount remaining due on the Restitution Judgment. Assuming that calculation confirms that an amount remains due, we affirm the trial court's order permitting the sale of Weber's residence to satisfy the remaining judgment amount.

We affirm the judgment in the Probate Action.[4]

## BACKGROUND

### 1. Weber's Conviction and the Restitution Judgment

After Weber waived jury and agreed to a court trial, she was convicted of one count of theft from an elder or dependent adult under Penal Code section 368, subdivision (d). (*Weber, supra,* slip opn. at p. 2.) Weber's victim, Johnston, was an elderly woman with dementia.[5]

Weber was a paralegal trained in probate law who obtained a power of attorney to handle Johnston's financial affairs. Weber gave herself a "constant stream of gifts." Although Weber was a fiduciary, she did not act on Johnston's behalf "at all." Weber and her family diverted Johnston's telephone calls and mail and isolated Johnston from her friends and her sister. Johnston was "completely dependent upon the Webers" who "completely isolated her essentially for three years from any outside contact."

Judge Van Sicklen did not "try[] to analyze the exact amounts of money" that Weber took. However, by adding the rough amounts of Weber's distributions "you come up to about 740 or so thousand dollars" from "money controlled by Mrs. Weber." In addition to finding Weber guilty under Penal

---

[4] We take no position on whether the sale of Weber's residence may be an appropriate remedy to enforce the judgment in the Probate Action.

[5] Facts concerning Weber's offense are taken from Judge Van Sicklen's oral findings in announcing his decision in the criminal trial on April 28, 2010.

4

Code section 368, subdivision (d), the judge found true that Weber took property exceeding $150,000 for purposes of a sentencing enhancement under former Penal Code section 12022.6, subdivision (a)(2).

Weber was sentenced on October 18, 2010. As part of her sentence, she was ordered to "make restitution to the victim, the estate of Lucille Johnston," pursuant to Penal Code section 1202.4, subdivision (f), "in an amount to be determined."

At a restitution hearing on December 3, 2010, the parties informed the court that they had agreed on a restitution amount of $700,000. The parties stated that prior restitution payments that Weber had made would be set off against that amount, leaving a principal balance of $414,545.99.

Kerley subsequently filed the Restitution Action to enforce the restitution award. On July 11, 2012, Kerley obtained an "order for restitution and abstract of judgment" in that action for the $700,000 restitution amount pursuant to Penal Code section 1214 (the Restitution Judgment). The order also awarded 10 percent annual interest from March 15, 2006, the date of the loss.

Weber appealed the award of interest. In *Weber,* this court held that the interest award was proper. We concluded that interest was mandatory under Penal Code section 1202.4, subdivision (f)(3)(G). (*Weber, supra,* slip opn. at p. 5.) We further held that the July 2012 Restitution Judgment was a "valid modification of the restitution order." (*Id.* at p. 6.)[6]

---

[6] We noted that, in stating that the restitution amount was $700,000, the Restitution Judgment was "intended to summarize the total amount of restitution awarded" and did not "purport to

5

On April 14, 2017, the trial court issued an order for the sale of a Manhattan Beach residence belonging to Weber to enforce the Restitution Judgment. That order is the subject of this appeal.

## 2. The Probate Action

Kerley originally filed the Probate Action in 2006, seeking recovery of the money that Weber and family members took from Johnston along with enhanced damages pursuant to section 859. After extensive pretrial proceedings, the action was set for trial.

In ruling on pretrial motions in limine, the trial court decided that the results of the criminal trial and Weber's stipulation to the amount of restitution essentially resolved all the issues for trial. As a result of that ruling, trial took less than an hour.

The court issued a written decision on April 4, 2017. The court found that Weber's criminal conviction established all the elements of elder abuse under Welfare & Institutions Code section 15610.30. The court also found that, based on her stipulation to the $700,000 restitution amount, Weber was estopped from claiming that she took less than that amount from Johnston. Based upon Kerley's agreement that damages could be calculated based upon that amount of loss, the trial court awarded double damages in the amount of $1.4 million under section 859.

---

abrogate the stipulation with respect to the offset." (*Weber, supra,* slip opn. at p. 9, fn. 4.)

6

The court subsequently issued a judgment in that amount, plus an award of attorney fees and costs.[7] The judgment noted that the compensatory damages awarded against Weber in the Restitution Action "of $700,000.00 plus interest, are not a component of this Judgment and are within the jurisdiction of that court."

## DISCUSSION

### 1. The Trial Court in the Probate Action Correctly Ruled That Weber Is Estopped From Contesting Liability or the Amount of Johnston's Loss

The trial court in the Probate Action was correct in deciding that, under principles of collateral estoppel, Weber's conviction under Penal Code section 368, subdivision (d) established her civil liability for elder financial abuse under Welfare and Institutions Code section 15610.30. Under the doctrine of collateral estoppel, any issue that is "necessarily decided" in prior litigation " 'is conclusively determined as to the parties or their privies if it is involved in a subsequent lawsuit on a different cause of action.' " (*Teitelbaum Furs, Inc. v. Dominion Ins. Co.* (1962) 58 Cal.2d 601, 604, quoting *Bernhard v. Bank of America Nat'l Trust & Sav. Asso.* (1942) 19 Cal.2d 807, 810.) Because the relevant facts are not in dispute here, we independently review the trial court's decision to apply collateral estoppel. (*Roos v. Red* (2005) 130 Cal.App.4th 870, 878 (*Roos*).)

---

[7] On December 14, 2017, the court issued a second amended judgment that included attorney fees in the amount of $978,698.41 and costs of $162,381.25. We grant Kerley's request to take judicial notice of this judgment.

7

Applying collateral estoppel to establish liability in a civil case based upon a prior felony conviction is appropriate when the prior criminal case established all the elements of the civil claims. (*Miller v. Superior Court* (1985) 168 Cal.App.3d 376, 381–382.) Here, in finding Weber guilty under Penal Code section 368, subdivision (d) the trial court necessarily found all the elements of financial abuse of an elder under Welfare and Institutions Code section 15610.30.

Civil liability for financial abuse of an elder may be established by proof that a person "[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder . . . for a wrongful use or with intent to defraud, or both." (Welf. & Inst. Code, § 15610.30, subd. (a)(1).) An elder is any California resident over 65 years old. (Welf. & Inst. Code, § 15610.27.) In finding Weber guilty, the trial court necessarily found that Weber committed "theft, embezzlement, forgery, or fraud," with respect to the property of an elder (which Penal Code section 368, subdivision (g) also defines as a person over 65). (Pen. Code, § 368, subd. (d).) Thus, Weber's criminal conviction established all the elements for liability under Welfare and Institutions Code section 15610.30.

The trial court also correctly ruled that collateral estoppel precluded Weber from arguing that she took less than $700,000 from Johnston. Johnston admitted that she took at least that amount by stipulating to the restitution award.

Weber argues that the restitution amount was not a "sum adjudicated" but was simply "a sum that . . . Weber settled upon to pay in the criminal case." This ignores that the stipulated restitution amount was reduced to an order that was equivalent to a *judgment.* (See Pen. Code, § 1202.4, subd. (i) ["A restitution order imposed pursuant to subdivision (f) shall be enforceable as

if the order were a civil judgment"]; Pen. Code, § 1214, subd. (b) ["the order to pay restitution . . . is deemed a money judgment if the defendant . . . stipulated to the amount of the restitution ordered"].)  Findings on issues that are "actually and necessarily included" in a judgment may be given collateral estoppel effect, regardless of whether the judgment is the result of a stipulation. (Code Civ. Proc., § 1911; *Wittman v. Chrysler Corp.* (1988) 199 Cal.App.3d 586, 591–592.)  The stipulated Restitution Judgment in this case necessarily decided that Weber stole at least $700,000 from Johnston.[8]

The trial court also properly applied the doctrine of judicial estoppel to establish that Weber stole at least $700,000.  The doctrine of judicial estoppel "prohibits a party from asserting a position in a legal proceeding that is contrary to a position he or she successfully asserted in the same or some earlier proceeding." (*Owens v. County of Los Angeles* (2013) 220 Cal.App.4th 107, 121 (*Owens*).)

The elements of judicial estoppel are:  " '(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was

---

[8] The Penal Code provision under which the trial court ordered restitution authorizes restitution for losses beyond money that is actually taken from the victim.  (Pen. Code, § 1202.4, subd. (f)(3)(A)–(K).)  However, that provision also directs a trial court to identify, to the extent possible, each loss to which the restitution order pertains.  (Pen. Code, § 1202.4, subd. (f)(3).)  The trial court did so here in its order for restitution and abstract of judgment entered on July 11, 2012.  The only loss identified in that order was for the "value of property stolen or damaged."

successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.' " (*Owens, supra,* 220 Cal.App.4th at p. 121, quoting *Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 181.) If these elements are met, a trial court has discretion in whether to apply the doctrine. (*Owens,* at p. 121.)

An appellate court reviews the findings of fact on which the application of judicial estoppel is based under the substantial evidence test. (*Owens, supra,* 220 Cal.App.4th at p. 121.) If the relevant facts are undisputed, the appellate court independently reviews whether the elements of judicial estoppel are met. (*Ibid.*) The trial court's discretionary decision whether to apply the doctrine is of course reviewed for abuse of that discretion. (*Ibid.*)

All the elements of judicial estoppel are met here. Weber's stipulation to the amount of restitution was a litigation position that Weber adopted concerning the amount of Johnston's loss. Weber was successful in asserting that position when the trial court in the Criminal Action accepted the stipulation. And, as the trial court in the Probate Action pointed out, Weber obtained a benefit from that position, because the evidence in the Criminal Action could have supported a larger restitution award based on the money that Weber took from Johnston.[9] Finally, Weber's stipulation that she took $700,000 from Johnston was totally inconsistent with her position in the Probate Action that the

_____

[9] As mentioned, the trial court in the Criminal Action identified losses of about $740,000.

10

amount she stole was less. We find no error in the trial court's decision that the elements of judicial estoppel are present here, and no abuse of discretion in the court's decision to apply judicial estoppel based upon these facts.

Weber argues that the trial court's ruling precluding her from contesting liability and damages erroneously deprived her of her right to a jury trial in the Probate Action. We reject that argument on several grounds.

First, Weber was not denied a jury trial on the issue of liability. Weber had a right to a jury trial in the Criminal Action, which she waived. (*Weber, supra,* slip opn. at p. 2.) Applying the results of that trial to the Probate Action under principles of collateral estoppel simply precludes her from relitigating an issue that she already had a full and fair opportunity to contest in a jury trial if she had chosen to do so.

Second, if the elements of collateral estoppel are met, judicial rulings from prior proceedings in criminal actions may be given preclusive effect in a subsequent civil case without violating the jury trial right. As a general rule, "notwithstanding the state constitutional jury trial guarantee, the lack of a jury trial on contested factual issues in one proceeding does not preclude application of collateral estoppel in a subsequent proceeding." (See *Roos, supra,* 130 Cal.App.4th at p. 881, citing *People v. Sims* (1982) 32 Cal.3d 468, 484, fn. 13.) In *McGowan v. City of San Diego* (1989) 208 Cal.App.3d 890, the court held that collateral estoppel may be applied in a civil action to determine issues that were decided in a prior judicial ruling on a motion to suppress in a criminal case. (*Id.* at p. 895.) Citing *Parklane Hosiery Co., Inc. v. Shore* (1979) 439 U.S. 322, 337, the court rejected the claim that arguments concerning monetary damages could not be collaterally estopped by such a ruling because doing

11

so would deny the estopped party's jury trial right. (*McGowan,* at p. 897.) Similarly, here, a prior stipulated judicial order on the amount of loss in the Criminal Action, later reduced to a judgment, may be given collateral estoppel effect despite Weber's jury trial right in the Probate Action.

Third, as discussed above, the doctrine of judicial estoppel applies to positions taken in any prior judicial or quasi-judicial administrative proceeding. (*Owens, supra,* 220 Cal.App.4th at p. 121.) The doctrine is intended to "maintain the integrity of the courts and to protect the parties from unfair strategies." (*Ibid.*) That principle applies whether or not the first proceeding included a jury trial right.

Weber also argues that the court's decision to preclude her under estoppel principles from trying the amount of Johnston's loss was erroneous because the decision conflicted with a prior ruling by another judge on summary judgment. There was no error. A trial court has inherent authority to revisit its rulings on a summary judgment motion and to reach a different conclusion in subsequent proceedings. (*Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1107.)

Weber's argument that Kerley's success in obtaining the Restitution Judgment precluded her from pursuing the Probate Action is similarly meritless. Weber claims that separate judgments for the restitution award and for damages in the Probate Action violate the general rule against multiple judgments concerning the same obligation. Weber cites *Vigilant Ins. Co. v. Chiu* (2009) 175 Cal.App.4th 438 (*Vigilant*) for the proposition that a victim of a crime must elect whether to accept a judgment for criminal restitution or pursue a separate civil action for damages.

12

Weber misreads *Vigilant*.  That case actually holds that a victim has a right to *both* restitution and a separate civil judgment.  (See *Vigilant, supra,* 175 Cal.App.4th at p. 445 ["Since restitution orders and civil judgments are issued for different purposes, a victim suffering from economic losses as a result of a criminal act has a right to both"].)  *Vigilant* recognized that a duplicate recovery for the same losses would be improper.  (See *id*. at p. 446, citing Pen. Code, § 1202.4, subd. (j).)  But duplicate recovery is not an issue here, as the judgment in the Probate Action specifically excluded the amount awarded in restitution.

**2.      No Separate Bad Faith Finding Was Necessary Here for Double Damages Under Section 859**

Weber argues that the trial court erred in not permitting a trial on the issue of whether she acted in bad faith.  We reject the argument based upon the language of section 859.

Section 859 provides, in relevant part, that:  "[i]f a court finds that a person has in bad faith wrongfully taken, concealed, or disposed of property belonging to a conservatee, a minor, an elder, a dependent adult, a trust, or the estate of a decedent, *or* has taken, concealed, or disposed of the property by the use of undue influence in bad faith *or* through the commission of elder or dependent adult financial abuse, as defined in Section 15610.30 of the Welfare and Institutions Code, the person shall be liable for twice the value of the property recovered by an action under this part. . . .  The remedies provided in this section shall be in addition to any other remedies available in law to a person authorized to bring an action pursuant to this part."  (Italics added.)

Thus, section 859 uses three different clauses separated by the conjunction "or" to describe three different categories of conduct that can support double damages:  (1) taking property in

13

bad faith; (2) taking property by the use of undue influence in bad faith; and (3) taking property through elder or dependent adult abuse as defined in Welfare and Institutions Code section 15610.30.  Because the third clause applied here, no separate finding of bad faith was necessary.  (See *Hill v. Superior Court* (2016) 244 Cal.App.4th 1281, 1287 ["the last alternative of section 859 allows for double damages without any requirement that petitioners show any aggravated misconduct—only financial elder abuse"].)

As discussed above, Weber's prior criminal conviction established all the elements of liability under Welfare and Institutions Code section 15610.30.  The trial court therefore properly awarded damages equal to twice the $700,000 that Weber stipulated she took from Johnston.  (See *Estate of Kraus* (2010) 184 Cal.App.4th 103, 106 [affirming judgment ordering the return of $197,402 to an estate as well as statutory double damages of $394,804].)[10]

---

[10] Section 859 authorizes damages of "twice the value of the property *recovered by an action under this part* [i.e., sections 850–859]."  (§ 859, italics added.)  Thus, the trial court was not quite accurate in stating in its written decision that section 859 authorizes statutory damages "for twice the value of the property taken."  However, in the context of this case the difference between the amount of "property taken" and the "value of the property recovered by an action under this part" is immaterial. (*Ibid*.)  Kerley initially sought to recover Johnston's actual loss under section 850 along with double that amount under section 859.  The trial court's decision in the Probate Action clearly determined that Kerley was entitled to recover the $700,000 that Weber took from Johnston.  That amount of actual loss was

14

3. **The Trial Court Did Not Err in Calculating Damages Under Section 859 Based on the Total Amount of Money That Weber Stole**

Weber argues that the trial court should have deducted some or all of the money that she paid in restitution before calculating double damages under section 859. We disagree.

Weber cites no support for an interpretation of section 859 that would permit a wrongdoer to avoid the statutory penalty of double damages by beginning to make restitution after a criminal conviction. The payments that Weber made were hardly voluntary; restitution was required after her conviction. (Pen. Code, § 1202.4, subd. (f).) The interpretation that she suggests would be inconsistent with the purpose of section 859 to punish and deter the wrongdoer. (*Estate of Young* (2008) 160 Cal.App.4th 62, 88.)

4. **Restitution Payments That Weber Made Before the Restitution Judgment Should Have Been Credited Against Principal Rather Than Prejudgment Interest**

The trial court in the Restitution Action rejected Weber's argument that her residence should not be sold to satisfy the Restitution Judgment because the judgment had already been fully satisfied. The court found that Weber's payment

---

excluded from the final judgment in the Probate Action only to avoid a double recovery, as the restitution judgment already gave Kerley the right to recover the $700,000. In light of this procedural history and the trial court's decision, the stipulated $700,000 restitution sum amounted to "property recovered by an action under this part." (§ 859.)

15

calculations "fail to account for payments that must be applied to interest but instead credits all pre-2012 payments against the principal."

Weber argues that the payments she made before the Restitution Judgment was entered should have been applied to principal rather than prejudgment interest. Weber claims that, if those payments are credited against principal, she has already paid the amount of the judgment.

Kerley argues that the prejudgment payments were properly applied to prejudgment interest, not principal, but that even if those payments are credited to principal Weber still owes money on the judgment. Kerley claims that Code of Civil Procedure section 695.220, subdivision (b) requires that Weber's payments be applied first against prejudgment interest and then to the principal amount owing. Because this is a legal issue, we review it de novo. (*Lozada v. City and County of San Francisco* (2006) 145 Cal.App.4th 1139, 1149.)

Code of Civil Procedure section 695.220 provides that "[m]oney received in satisfaction of a money judgment" should first be applied to fees and accumulated interest. (Code Civ. Proc. § 695.220, subds. (a)–(c).) Thereafter, "[a]ny remaining money is to be credited against the principal amount of the judgment remaining unsatisfied." (Code Civ. Proc., § 695.220, subd. (d).)

Payments made before a judgment is entered may be payments on an existing debt, but they cannot be payments "in satisfaction" of a judgment that does not yet exist. In *Roden v. AmerisourceBergen Corp.* (2010) 186 Cal.App.4th 620 (*Roden*), the court held that Code of Civil Procedure section 695.220 did not control the application of payments made before a judgment was entered. (*Id.* at pp. 661–662.) Rather, the issue of whether those payments should be applied against interest or principal was

16

governed by Civil Code section 1479, which applies "[w]here a debtor under several obligations to another, does an act, by way of performance, in whole or in part, which is equally applicable to two or more of such obligations."  (*Ibid.*)

Civil Code section 1479 provides that a debtor may specify how his or her "performance" should be credited by communicating his or her intention to the creditor at the time of performance.  In the absence of such a specification, the creditor may choose to apply a payment to any obligation then due.  Only if "neither party makes such application within the time prescribed herein" do default rules apply which require payments to be credited first against interest due and then to principal. (*Ibid.*)

In *Roden*, the court applied these rules in holding that a prejudgment payment made by a party should be credited against principal and interest in the fashion that the party specified when it made the payment.  (*Roden, supra,* 186 Cal.App.4th at p. 662.) That same principle applies here.

The record in this case reflects the parties' *agreement* that Weber's payments prior to the Restitution Judgment should be credited against principal.  In informing the court at the December 3, 2010 hearing that the parties had agreed to the restitution amount of $700,000, the parties explained that Weber "is entitled to off set for the cashier's check she's already tendered in the total amount of $285,454.01, leaving a balance due of $414,545.99."  The parties also stated on the record that the lawyer for Johnston's estate had agreed to that amount.  The court's minute order confirms that "[t]he parties agree that there is an off set for the money previously paid in the amount of $285,454.01 . . . leaving a balance of $414,545.99."

17

The parties' agreement to the set off is consistent with the fact that, until the July 2012 Restitution Judgment was entered, the restitution award did not include interest. (*Weber, supra,* slip opn. at p. 4.) The Restitution Judgment in fact was a "modification of the restitution order" reflecting the statutory requirement for an award of interest. (*Id.* at p. 6.) Because no obligation had yet been imposed for prejudgment interest at the time of Weber's prejudgment payments, the parties obviously understood that those payments would be credited against the principal amount of the restitution award.

The parties' stipulation that Weber's prejudgment payments should be set off against principal reflects the understanding of both debtor and creditor concerning how Weber's "performance should be applied" under Civil Code section 1479. We therefore conclude that, pursuant to that section, Weber's prejudgment payments should be credited against principal rather than interest.

The parties dispute the effect of this ruling. As mentioned, Weber claims that, if her prejudgment payments are credited against principal, she has already satisfied the judgment. Kerley claims that "Weber's calculations omit prejudgment interest entirely."[11] Kerley submits a calculation as an exhibit to her brief determining the amount remaining on the judgment as of October 5, 2016 (the date the writ of execution was issued).

---

[11] Kerley is correct in arguing that Weber is precluded from arguing that pretrial interest from the date of loss is improper. That issue was decided against Weber in this court's prior opinion in *Weber, supra,* B244008.

18

Assuming that the payment dates and amounts and accumulated interest calculations on Kerley's exhibit are correct, the exhibit appears to be methodologically sound.  However, in light of the factual dispute between the parties on the effect on the amount owed of crediting prejudgment payments to principal, we leave to the trial court to determine whether a sum remains owing on the Restitution Judgment and, if so, the amount of that sum.

**DISPOSITION**

1.      The judgment in the Probate Action, Los Angeles Superior Court No. BP097749, is affirmed.

2.      The trial court's April 14, 2017 order for the sale of a dwelling in the Restitution Action, Los Angeles Superior Court No. YS024039, is reversed with respect to the trial court's ruling that Weber's restitution payments prior to the entry of the Restitution Judgment on July 11, 2012, should be credited against prejudgment interest.  The case is remanded to the trial court with directions to calculate the amount remaining on the Restitution Judgment after crediting Weber's payments prior to July 11, 2012, to the principal amount of the restitution obligation.  If that calculation confirms that money remains owing on the Restitution Judgment, Kerley may proceed with the

19

sale of Weber's residence. In all other respects the trial court's order is affirmed.

The parties are responsible for their own costs on appeal.

CERTIFIED FOR PUBLICATION.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.