Filed 12/21/22  Triwest Homes II v. Ostayan CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| TRIWEST HOMES II, LP, | B307708 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. YC072373) |
| v. | |
| SAM OSTAYAN, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark A. Young, Judge.  Affirmed.

Kuzyk Law, Reid H. Breitman; Benedon & Serlin, Douglas G. Benedon and Judith E. Posner for Plaintiff and Appellant.

The Ryan Firm, Timothy M. Ryan and Andrew Mase for Defendant and Respondent.

\* \* \* \* \* \*

Triwest Homes II, LP (Triwest Homes), appeals from a judgment entered after the trial court granted summary judgment in favor of Sam Ostayan[1] on Triwest Homes' causes of action against Ostayan including breach of contract, breach of the covenant of good faith and fair dealing, fraud, and negligent misrepresentation arising out of a real property sale.

Triwest Homes purchased real property, consisting of incomplete construction, from Ostayan located at 2950 Crownview Lane, Palos Verdes, California 90275 (the property). In its complaint, Triwest Homes alleged that Ostayan failed to inform Triwest Homes of a city-imposed road widening requirement, which needed to be completed at the property prior to Triwest Homes' purchase.

The trial court granted Ostayan's motion for summary judgment on the ground that Triwest Homes lacked standing to assert its claims against Ostayan due to Triwest Homes' failure to provide evidence of a valid assignment of rights from the initial proposed buyer of the property, DAS Fund I, LLC (DAS Fund), to Triwest Homes. Alternatively, the trial court granted summary judgment on the ground that Triwest Homes had constructive notice of the road widening requirement. We conclude that the trial court properly granted Ostayan's motion

---

[1] The defendants in this action were originally Ostayan and Arden Management, LLC (Arden). By order of the court dated September 24, 2018, Ostayan was substituted in the place and stead of Arden. Arden thereafter had no further duty to participate in the litigation but would be bound by and subject to enforcement of any judgment against Ostayan in the action. The order was not deemed an admission of an alter-ego relationship between Arden and Ostayan.

2

for summary judgment, and accordingly affirm the judgment. Because we affirm the judgment, we also affirm the postjudgment award of attorney fees in favor of Ostayan.

## FACTUAL BACKGROUND

### Ostayan's work on the property

Ostayan purchased the property at a foreclosure sale in November 2012. It was a "single-family residence under construction."

Ostayan hired John Schuricht as an engineer to complete the construction at the property. According to Schuricht, the project initially seemed simple until Ostayan and Schuricht discovered that the fire department required the construction of a 20-foot-wide fire road leading to the property. Schuricht adjusted the plans accordingly. The fire department then informed Schuricht that a turnaround was also necessary. The fire road and turnaround requirements made the project more expensive than what was initially anticipated. Schuricht testified that "there would have to be retaining walls . . . [b]ecause the existing road that was there was right up against the hill." In addition, there were concerns about property lines. Schuricht testified that he would have to "cut into other peoples' slopes," which meant "getting permission from the owner to build the retaining wall, . . . plus the cost of the wall." Schuricht testified that the entire project "suddenly . . . became . . . a lot more expensive."

In March 2014, the proposed building plans for the property were submitted to the City of Ranchos Palos Verdes (city). The March 2014 plans included the 20-foot-wide access road and the "turnaround" area, as required by the fire department. The March 2014 plans also included a "Boundary

3

Retracement Topographic Survey," which contained a box including the following statement in all capital letters: "FINAL OCCUPANCY CERTIFICATION CONTINGENT UPON COMPLETION OF PAVED 20'-0" WIDE ROAD FOR EMERGENCY VEHICLE ACCESS." The road requirement was printed in red on the first sheet of the plans. Schuricht testified that "we put it in red so people don't miss it, because it's a really important requirement." Tom DeFazio, a representative of the city, testified that the city had a complete set of plans that included the road widening requirement. The city ultimately approved the plans and issued a building permit in March 2014.

**Escrow and sale of the property**

In August 2014, Ostayan listed the property for sale at $1,549,000. The listing described the property as "[p]rivate drive leads to this custom designed one story home of 4,550 [s]quare [f]eet of living area with flowing floor plan and ocean view flat yard and center courtyard that is ready to be completed, all permits are active and all work done to date ha[s] been inspected and passed by city." (Boldface omitted.) The agent remarks in the listing indicated, "Out of area [b]roker [o]wner wants [the property] SOLD[.] Selling as is in present condition, all permits are current and paid for, all work done to date inspected and passed by city, perfect for someone who wants to build a new house without spending 2 years for planning and permits etc. [L]isting agent, seller related[.] [B]uilding plans available and can be emailed to serious prospect. Shown by appointment only, this one is priced right."

By September 2014, Justin Thomas, a local realtor, was in contact with Ostayan about the property. After visiting the property with his client, Thomas asked Ostayan about his

motivation behind the sale. Thomas stated, "It appears that you were on track to complete this project and then just stopped. Are there problems with the neighbors? Anything else that we should be aware of?" Ostayan did not mention the fire road, but stated that it was "too far" for him and he had other projects he needed to finish.

On September 25, 2014, Thomas informed his client that he had checked out the file on the property at the building department. He stated that the file "is THICK, to say the least." He included a link to "full size plans" of the property. Thomas informed the client that Ostayan was "selling as is, where is. No warranties, or guarantees. Buyer advised to bring own contractors to inspect what is there." Thomas told the buyer "be sure to go to the City of Palos Verdes into the building and safety department and the planning department and look at all the plans" for the property.

On September 26, 2014, Thomas formally presented an offer on behalf of his client for the property, identified as "DAS Fund I, LLC and/or assignee." Thomas described the client as an "investor[] . . . involved in developments across the nation." Thomas noted several "major downfalls" with the property, including "very low ceilings, hard to find road, location being on the east side of the hill, driveway that will require a lot of work to make a proper entrance, master bathroom being right up against a retaining wall, etc. On top of these issues, this home has been under construction for the last 10 years and has had two different owners." The offer listed as additional items included in the sale "[a]ll plans, permits, reports and materials for this home." It also specified, "Buyer is to purchase the property as is, where is.

5

Buyer to choose vesting during close of escrow."  The offer was signed by Rob Brauchli, DAS Fund manager.

Brauchli also signed a "Buyer's Inspection Advisory," dated September 26, 2014, which stated that the buyer had "an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation."

DAS Fund involved experienced general contractor, Chuck Rowland, to assist with the purchase.  As part of his work responsibilities, Rowland oversaw the vetting of properties on behalf of certain businesses, including the "Triwest group." Rowland visited the property and met Ostayan.  Rowland asked Ostayan if there was anything he should know about the property, and Ostayan told him "it was a simple build-out, that everything needed to complete the project was there, that someone was going to make a lot of money, and that the only reason he was selling the property was because it was too far for him to travel."  Rowland reviewed the architectural plans for the property, which did not include mechanical, electrical or plumbing specifications.  Rowland also went to the city's Building and Safety Department to review the complete file.  During his inspection of the city's files, he did not see any civil or structural plans or anything that suggested the existence of any road work requirements tied to the project.

On October 1, 2014, Ostayan countered DAS Fund's offer. The counteroffer listed the sale price as $1.41 million and included additional demands regarding escrow and deposit.

DAS Fund made a second counteroffer on October 2, 2014, listing additional demands: "–Sales price to be $1,300,000 cash [¶] –22 day escrow [¶] –17 days to complete buyers investigations." Ostayan again countered, asking that escrow close on or before October 24, 2014, and "Assignee to be designated with 1 day from opening escrow." In a final counteroffer, DAS Fund stated, "Buyer to complete investigations and remove all contingencies on/before October 24, 2014," and "[c]lose of escrow date to be on/before October 27, 2014."

Ostayan and DAS Fund also executed a "Real Estate Transfer Disclosure Statement" wherein DAS Fund's real estate agent, Thomas, added the following term: "Buyer is strongly urged to conduct inspections including but not limited to . . . permits/finals with the City of RPV to Buyer's complete satisfaction." The document was submitted with a "Buyer's Inspection Waiver," which again advised DAS Fund that "[y]ou have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and to investigate and verify information and facts that you know or that are within your diligent attention."

During escrow, DAS Fund continued to investigate the property. In an e-mail to Brauchli dated October 13, 2014, Thomas included a link to the file at the city. Thomas wrote, "**Disclaimer**: I recommend that a member of your team go to the city to verify that the entire file was copied."

On October 24, 2014, Thomas sent Ostayan an e-mail, stating, "I want to let you know that the buyers have been working very hard inspecting the property and getting as many people as they can to go over the work that has been done. I met

7

with them yesterday at the site and they are still diligently reviewing a few items that need a closer look."  Thomas asked Ostayan for an extension of the escrow period, stating, "I'm sure you understand that this project requires a lot more investigation than a normal home would . . . ."

Thomas later made copies of the Planning Department's file for the property.  On October 31, 2014, Thomas sent Rowland an e-mail with links to "Crownview Plans" and the "City File."  A few days later, Thomas sent Rowland another e-mail with a Dropbox link titled "2950 Crownview Plans."

On November 3, 2014, Ostayan and Brauchli on behalf of DAS Fund executed an "Addendum."  The addendum added the following terms:

1.  Buyer to request a $25,000 price reduction in lieu of missing items and repairs.  Final purchase price to be $1,275,000.

2.  Buyer to release their deposit through escrow to seller upon acceptance of all terms.

3.  Final closing date to be on or before November 7, 2014.

4.  Seller to provide buyer the following documentation:

   A.  Full set of original approved building plans and working drawings.

   B.  Copy of building cards.

   C.  Active building permits.

   D.  Building and permit applications.

   E.  Subcontractor and their contact information.

5.  Seller to disclose of any nonrecorded mechanic liens.

6.  Final purchasing entity to be Triwest Development LLC (Triwest Development).

7.  Buyer hereby removes all contingencies upon seller acceptance of all said terms.

Blake Overend, the managing member of OBC Pacifica Investments, LLC, a general partner of Triwest Homes, oversaw the closing of Triwest Homes' purchase of the property.[2] Prior to authorizing the closing of the purchase of the property, Blake received an e-mail from Rowland confirming that Rowland reviewed the city's Building and Safety Department files and spoke with a Building and Safety representative. Rowland advised Blake that based on the review and conversation, all required permits were in place and that he saw no problems. Blake also reviewed the plans that Ostayan had provided and saw no reference to a road widening requirement or other concern that made the property not worth purchasing. During escrow Triwest Homes had another general contractor, Robert Jayne, "inspect[] the property and ma[k]e a bid to complete improvements. At no time did anyone mention [to Jayne] that any widening of the access road to the property would be required."

On November 4, 2014, Thomas sent Ostayan an e-mail, "Now that the buyers have released the deposit and are gearing up to close on Friday, they have requested a copy of the documentation, and then originals be left at the site upon close." Specifically, Thomas requested, "-full set of plans, [¶] -copy of building cards, [¶] -active building permits, [¶] -building and permit applications, [¶] -subcontractor list and their contact info." On November 5 and 6, 2014, Ostayan sent scanned documents to Thomas at Thomas's request.

---

[2] Blake Overend and Bryce Overend will be referred to by their first names due to their common last name. No disrespect is intended.

9

On November 5, 2014, a document entitled "Escrow Amendment" identified "Triwest Development LLC" as the assignee of DAS Fund. The document specified that it "shall not have any effect until signed by all parties as indicated below." Three signatures were required: Ostayan on behalf of Arden; Blake on behalf of Triwest Development; and an authorized signer on behalf of DAS Fund. This escrow amendment was signed by Ostayan but was not signed by Triwest Development or DAS Fund.

A second document captioned "Escrow Amendment— Revised" dated November 5, 2014, identified Triwest Homes as the assignee of DAS Fund. The escrow amendment specified that it "shall not have any effect until signed by all parties as indicated below." Again, three signatures were required: Ostayan on behalf of Arden, Blake on behalf of Triwest Homes, and an authorized signer on behalf of DAS Fund. The "Escrow Amendment—Revised" was signed by Blake as representative for Triwest Homes, and by a representative of DAS Fund. It was not executed by Ostayan.

On November 5, 2014, Ostayan signed a grant deed on behalf of Arden, deeding the property to Triwest Homes.

**Events following the close of the property sale**

On November 13, 2014, Bryce, acting on behalf of Triwest Development, executed a "Receipt for Reports No. 1." The document indicated it was associated with "the terms and conditions of the California Residential Purchase Agreement . . . between Triwest Development LLC ('Buyer') and Arden Management, LLC ('Seller')." It also indicated that buyer acknowledged receipt of "Pages 1-247 copied from City of RPV file given as a courtesy only and buyer to verify all to buyer's

10

complete satisfaction." The document specified "[t]hese Reports should not be considered as a substitute for obtaining your own inspections and Reports covering the same items and any other matter affecting the value and desirability of the property."

On December 4, 2014, Jayne contacted Brauchli, to determine if Ostayan had provided "the stamped plans from the seller" so the needed inspection could happen before commencing further construction at the property. Brauchli advised that the plans were left in his office on December 5, 2014. Once Jayne had possession of the "stamped" plans, he arranged for an inspection on or about December 9, 2014. At that time, the city inspector, DeFazio, asked if Jayne was aware of the road widening that the fire department was requiring. Jayne was not. The inspector went through the plans and advised Jayne that two pages pertaining to the road widening were missing. Following the meeting, Jayne contacted Rowland and informed him of the information he received.

Jayne's December 9, 2014, e-mail to Rowland stated: "the inspector today said we are responsible for widening the road 3' all the way from the house to Crown view, and that it's an item from the Fire Dept. I haven't verified, as I will let you take it from here. I find it strange that we weren't provided this information previously, as the city inspector said [Ostayan] was aware of it. The length of the road widening would be about 245' feet, with a retaining wall. When you want to, we can address the items with the Fire Dept. I checked the files at the city, and they don't have a copy of the fire dept plan, only the original plans for building." Triwest Homes claims that this was the first time it heard of the road widening requirement.

11

On February 9, 2015, Jayne wrote Schuricht asking for a complete set of plans for the property. Schuricht sent Jayne a complete set, including the road widening plans, on February 12, 2015. This was the first time Jayne saw the road widening plan.

Brauchli testified that he relied on the "incomplete plans that Mr. Ostayan provided to Mr. Thomas that he misrepresented were complete plans but omitted plans pertaining to the road widening required by the LA Fire Department." Brauchli testified that "[i]f I had known the truth about the road widening requirement, I would not have agreed to purchase the property or to the Addendum."

Triwest Homes could not complete construction at the property without complying with the road widening requirement. Such compliance created more than four years of additional work and cost approximately $1.5 million.

In September 2017, Thomas and Bryce on behalf of Triwest Development executed a "Release of Claims Re Crownview Drive" (release), stating, "In consideration of his cooperation in the assertion of claims against Sam Ostayan and his affiliated companies, . . . Triwest Development, LLC, . . . hereby fully, completely, and finally releases and discharges Justin Thomas . . . from and against any and all claims . . . arising from or related to Triwest's purchase of the Crownview property from Ostayan . . . ."

## PROCEDURAL HISTORY

**The complaint**

On October 17, 2017, Triwest Development filed a complaint against Ostayan alleging (1) breach of contract, (2) breach of covenant of good faith and fair dealing, (3) fraud, (4)

12

negligent misrepresentation, (5) rescission and restitution, and (6) common counts arising out of the purchase of the property and Ostayan's alleged failure to deliver a full set of plans to Triwest Development prior to the close of escrow.

**Stipulations regarding the parties**

After the complaint was filed, the parties entered a stipulation that Ostayan agreed to "assume responsibility for all contract obligations and liabilities of Arden alleged in the [c]omplaint to the extent that any such obligations or liabilities exist," thus relieving Arden of any duty to participate in the action.

In December 2017, the parties executed a joint stipulation to "substitute Triwest Homes II, LLP [*sic*] as Plaintiff." (Boldface and capitalization omitted.) The stipulation provided that "it has been determined that the named Plaintiff, Triwest Development LLC, is not the title holder to the real property that is the subject of this action, and the action involves title to the property, such that it is necessary and proper to substitute the record title holder, Triwest [Homes], a Delaware limited partnership, in its place, the defendants will not be prejudiced by the substitution."

On January 24, 2018, Triwest Development filed a motion to substitute Triwest Homes as plaintiff and sought an order relating substitution back. The motion was brought pursuant to Code of Civil Procedure section 473.[3] In its motion, Triwest Homes stated, "Based on the contract documents, Triwest

---

[3] Code of Civil Procedure section 473, subdivision (a)(1) permits the court to "allow a party to amend any pleading or proceeding by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect . . . ."

13

Development, LLC was named as the Plaintiff in this action. However, during the preparation of responses to Defendants' initial discovery, it was determined that Triwest Homes II, LP, is the actual assignee of the contract and title holder of the property, and thus the real party in interest in the claims asserted in the Complaint." The motion noted that while the parties had stipulated to this change, the court had not yet entered an order.

The court signed and filed the stipulation and order on the stipulation on February 15, 2018. On March 9, 2018, the court held a hearing on Triwest Development's unopposed motion for substitution of Triwest Homes as plaintiff. After reviewing the motion papers, including the stipulation and prior order granting the requested substitution, the court entered a ruling granting the motion as the order of the court. In its discussion, the court noted that "Plaintiff has presented evidence to show that the actual assignee of the contract and title holder of the property is named 'Triwest Homes II, LP.'" Further, the plaintiff "adequately demonstrated that an order to substitute Triwest Homes II, LP as plaintiff in this action and for an order relating the substitution back to the filing date of the complaint is proper." Thus, the court ordered "that Triwest Homes II, LP is substituted as plaintiff in this action in the place of Triwest Development, LLC." The court further ordered that the substitution relate back to the filing date of the original complaint.

**Motion for Summary Judgment**

On January 10, 2020, Ostayan filed a motion for summary judgment or, in the alternative, motion for summary adjudication (MSJ). As to the contract causes of action, Ostayan primarily

14

argued that Triwest Homes lacked standing to assert the causes of action alleged because Triwest Homes was never assigned the purchase agreement. Ostayan also argued that Triwest Homes waived any alleged breach and that Triwest Homes "was not harmed by any alleged breach as it had notice of the Road Widening Requirements prior to close of escrow."

As to the third cause of action for fraud, Ostayan argued that DAS Fund never assigned Triwest Homes its right to the fraud claim. Ostayan further argued that because Triwest Homes was never assigned the purchase contract, and because no representations were made to it, and Triwest Homes did not rely on any alleged representations made by Ostayan, the fraud cause of action failed. Ostayan argued that the cause of action for negligent misrepresentation failed for the same reasons. In addition, Ostayan argued that the negligent misrepresentation cause of action failed because of DAS Fund's use of the "as is, where is" language and DAS Fund's affirmative duty to investigate.

As to the causes of action for restitution and rescission, Ostayan argued that these were not causes of action but remedies, which were irrelevant due to the failure of Triwest Homes' substantive causes of action.

As to the sixth cause of action for common counts, Ostayan similarly argued that this cause of action failed because it was based on the same facts as the previous causes of action, which also failed.

In opposition, Triwest Homes argued that Ostayan could not now avoid the stipulation and court order substituting Triwest Homes as the proper plaintiff in the matter. In addition, Triwest Homes argued that Ostayan "cannot now challenge the

propriety of the assignment to Triwest [Homes], as affiliate of the named assignee . . . ." Further, Triwest Homes argued that Ostayan deeded the property to it without objection and could not challenge the authenticity of the deed. As to Ostayan's argument regarding constructive notice, Triwest Homes responded that constructive notice is not a contract defense and that the issue involved numerous disputed facts.

The evidence Triwest Homes used to oppose the issue of standing were the grant deed to Triwest Homes, the order on the stipulation to substitute the plaintiff, and the order granting the motion to substitute the plaintiff.

On June 29, 2020, the trial court issued a written order granting Ostayan's MSJ in full. The court noted that on March 9, 2018, it granted a motion to substitute Triwest Homes as the plaintiff. Regarding its language that "Triwest Homes was the assignee under the contract," the court stated "Plaintiff's counsel presented the deed to the Palos Verdes property as evidence that Triwest Homes [] was the actual assignee under the contract. Plaintiff's counsel did not present evidence of an actual contract where Triwest Development, LLC or DAS Fund assigned to Plaintiff Triwest Homes the rights under the contract."

The trial court noted that the existence of a contract between the parties was an essential element of the causes of action for breach of contract and breach of the covenant of good faith and fair dealing. The court found Ostayan had presented evidence "that DAS Fund did not separately assign its rights under the purchase agreement to another entity, including Triwest Development." Thus, for the purposes of summary judgment, Ostayan "met his burden establishing that the purchase agreement was not assigned to Plaintiff." Without

16

evidence of an assignment, Triwest Homes' contract claims failed. Alternatively, the trial court also found Ostayan met its burden of showing that Triwest Homes had constructive knowledge of the plans such that Ostayan's failure to provide the plans did not cause Triwest Homes damage, and Triwest Homes failed to refute this claim.

As to the fraud and negligence causes of action, the trial court held that since Triwest Homes failed to allege it was assigned the tort claims, Ostayan was entitled to summary adjudication of these two causes of action.

As to restitution and rescission, the trial court agreed with Ostayan these were in fact remedies, and because Triwest Homes' underlying causes of action had no merit, Ostayan was entitled to summary adjudication as to these causes of action.

As to the common counts, the trial court found that because Triwest Homes failed to meet its burden on the previous causes of action, Ostayan was entitled to summary adjudication on this cause of action as well.

On July 15, 2020, the trial court entered judgment in favor of Ostayan and against Triwest Homes.

On September 9, 2020, Triwest Homes filed its notice of appeal from the judgment.

**Attorney fees**

On September 14, 2020, Ostayan filed a motion for attorney fees pursuant to Code of Civil Procedure sections 1021, 1032, 1033.5, Civil Code section 1717, and the terms of the purchase agreement. Ostayan requested attorney fees of $360,965.50. Triwest Homes opposed the motion. After considering the briefs and oral arguments, the trial court granted the motion in full.

17

On April 15, 2021, Triwest Homes appealed from the attorney fee order.

In July 2021, we granted Triwest Homes' motion to consolidate the appeals.

## DISCUSSION

### I.  Applicable law and standard of review

"'A trial court properly grants a motion for summary judgment only if no issues of triable fact appear and the moving party is entitled to judgment as a matter of law.'" (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 720; see Code Civ. Proc., § 437c, subd. (c).)  "'The moving party bears the burden of showing the court that the plaintiff "has not established, and cannot reasonably expect to establish,"' the elements of his or her cause of action." (*Wilson*, at p. 720, quoting *Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.)

"If a defendant satisfies this initial burden, the burden shifts to the plaintiff to present evidence demonstrating there is a triable issue of material fact." (*Dix v. Live Nation Entertainment, Inc.* (2020) 56 Cal.App.5th 590, 604 (*Dix*); see Code Civ. Proc. § 437c, subd. (p)(2).)

"'We review a grant of summary judgment . . . de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party or a determination a cause of action has no merit as a matter of law.'" (*Dix, supra,* 56 Cal.App.5th at p. 604.)  Any doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. (*Ibid.*)  "'"We liberally construe the opposing party's evidence and resolve all doubts in favor of the opposing party.  [Citation.]  We consider all evidence in the

18

moving and opposition papers, except that to which objections were properly sustained.""" (*Ibid.*) Generally, in reviewing a summary judgment, we "consider only those facts before the trial court, disregarding any new allegations on appeal." (*American Continental Ins. Co. v. C & Z Timber Co.* (1987) 195 Cal.App.3d 1271, 1281.) "Thus, possible theories that were not fully developed or factually presented to the trial court cannot create a 'triable issue' on appeal." (*Ibid.*)

## II.  Triwest Homes' claims fail as a matter of law as there was no valid assignment of the purchase agreement or tort claims

Triwest Homes' breach of contract causes of action were based on "the terms of the applicable written contract, which was made between [Ostayan] and DAS Fund I, LLC." Triwest Homes alleged that "Plaintiff is the permitted assignee of DAS." As the alleged assignee of DAS Fund, Triwest Homes asserted that "the close of escrow was subject to various conditions precedent, including, inter alia, delivery to Plaintiff of a 'Full set of original approved building plans and existing drawings.' Triwest Homes' allegation that it was the assignee of the purchase agreement between Ostayan and DAS Fund is not supported by any competent evidence in the record.

In the record two different documents identifying different assignees exist.[4] Neither is fully executed by the necessary parties. A document entitled "Escrow Amendment" identified "Triwest Development LLC" as the assignee of DAS Fund. The document specified that it "shall not have any effect until signed

---

[4]     Triwest Homes does not dispute that Triwest Homes and Triwest Development are distinct legal entities.

19

by all parties as indicated below." Three signatures were required: Ostayan on behalf of Arden, Blake on behalf of Triwest Development, and an authorized signer on behalf of DAS Fund. This escrow amendment was not signed by Triwest Development or DAS Fund.

A second document captioned "Escrow Amendment—Revised," identified Triwest Homes as the assignee of DAS Fund. The escrow amendment specified that it "shall not have any effect until signed by all parties as indicated below." Again, three signatures were required: Ostayan on behalf of Arden, Blake on behalf of Triwest Homes, and an authorized signer on behalf of DAS Fund. The "Escrow Amendment—Revised" was not executed by Ostayan.

As neither of these escrow amendments was signed, as required by the contractual language, by all parties, neither was effective to transfer DAS Fund's rights under the purchase agreement, including DAS Fund's right to receive a full set of original approved building plans and existing drawings. Triwest Homes makes no argument that either of these partially executed assignments, standing alone, created a valid legal assignment of DAS Fund's rights in contract or tort.

A necessary element of Triwest Homes' breach of contract claim is the existence of a contract between the parties. (*Reichert v. General Ins. Co.* (1968) 68 Cal.2d 822, 830.) A contractual relationship between the parties is also a necessary element of Triwest Homes' cause of action for breach of the covenant of good faith and fair dealing. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 35.) Because the evidence before the trial court showed that no such contractual relationship between the parties existed, the contractual claims fail as a matter of law.

20

Triwest Homes' causes of action for fraud and negligent misrepresentation fail for the same reason—the lack of a valid assignment of DAS Fund's tort claims. In its cause of action for fraud, Triwest Homes alleged that Ostayan made misrepresentations "to Plaintiff and its representatives" prior to and during the escrow period, between approximately September 2014 through October 2014.[5] Specifically, Ostayan allegedly misrepresented "(1) his reason for selling the property, (2) that defendants had obtained all required permits, (3) that all work had been inspected and approved by the City, and (4) the existence, scope and expense of complying with the Road Widening Requirements." Such representations were made to DAS Fund during the escrow period. As there was no valid assignment of the purchase agreement at any time during the negotiation and escrow process, the alleged misrepresentations were made to DAS Fund alone.

DAS Fund had the right to assign its fraud claim under the circumstances. (*Wikstrom v. Yolo Fliers Club* (1929) 206 Cal. 461, 463 [holding that among the rights of action held to be assignable are "causes of action arising from torts which affect the estate rather than the person of the individual who is injured"].) However, an assignment of DAS Fund's tort claims was required to be "distinct from an assignment of . . . contractual rights." (*Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 985.) There is no evidence that DAS

---

[5] The complaint appears to contain a typographic error suggesting that the Real Estate Disclosure Statement and the Seller Property Questionnaire were completed in October 2016. The record shows that these documents were executed in October 2014, prior to the sale closing.

21

Fund ever assigned its fraud claim, or any other tort claim, to Triwest Homes or any other entity. Therefore Triwest Homes has no standing to assert the fraud claim, and the claim fails as a matter of law.

As there is no valid assignment of any tort claim from DAS Fund to Triwest Homes, Triwest Homes' cause of action for negligent misrepresentation fails as well.

As to its causes of action for rescission and restitution, Triwest Homes concedes that these are remedies, not independent causes of action, thus Triwest Homes could only pursue them if the MSJ were reversed. As the MSJ is affirmed on the grounds that Triwest Homes was never assigned either the contractual or tort claims it seeks to pursue, we decline to discuss these remedies.[6]

## III.   The stipulation and court order

In support of its position that it was the proper assignee of the purchase agreement between Ostayan and DAS Fund, Triwest Homes points to the stipulation and court order substituting Triwest Homes in lieu of Triwest Development as the plaintiff. Neither document supports Triwest Homes' position that it was the assignee of the purchase agreement between Ostayan and DAS Fund.

The stipulation between the parties, filed February 15, 2018, provides: "it has been determined that the named Plaintiff, Triwest Development, LLC, is not the title holder to the real property that is the subject of this action, and the action involves title to the property, such that it is necessary and proper to

---

[6]    Triwest Homes has failed to separately address its cause of action for common counts, therefore we decline to address it.

22

substitute the record title holder, Triwest [Homes], a Delaware limited partnership, in its place, the defendants will not be prejudiced by the substitution; . . . the parties hereby stipulate to the substitution of [Triwest Homes] as the Plaintiff in this action." The stipulation contains no language suggesting that Ostayan agreed that Triwest Homes was the legal assignee of the purchase agreement or DAS Fund's tort claims against Ostayan.

Triwest Homes makes much of Ostayan's assertion that he was not prejudiced by the substitution. However, as the trial court noted, Ostayan's assertion that he was not prejudiced by the substitution in no way waived his right to argue the assignment issue. In fact, because no valid assignment exists in the record, it made no difference to Ostayan whether Triwest Homes or Triwest Development was pursuing the action. Either way, Ostayan could have successfully argued that the plaintiff lacked a valid assignment of rights.

On March 9, 2018, the trial court entered an order substituting Triwest Homes as plaintiff in this action. In the "Discussion" section of the order, the trial court wrote:

> "Plaintiff has presented evidence to show that the actual assignee of the contract and title holder of the property is named 'Triwest Homes II, LP.' (Decl., David J. Myers, ¶ 3). The substitution does not give rise to a wholly distinct and different legal obligation against defendants. Therefore, plaintiff has adequately demonstrated that an order to substitute Triwest Homes II, LP as plaintiff in this action and for an order relating the substitution back to the filing date of the complaint is proper."

Based on the stipulation and language of the court order, Triwest Homes claims that "[n]o need existed for Triwest Homes

23

to produce evidence of an assignment," as the issue had been settled.

While the order contained language that Triwest Homes had presented evidence that it was the "actual assignee" of the purchase agreement, the order made no findings of fact regarding the legal assignee of that agreement. The order itself related only to substitution of the plaintiff, stating: "The court orders that Triwest Homes II, LP is substituted as plaintiff in this action in the place of Triwest Development, LLC. The court further orders that the substitution relates back to the filing date of the original Complaint."

As set forth above, neither the stipulation nor the court order presents a factual finding regarding Triwest Homes' legal status as assignee of the purchase agreement at issue. To the extent that the court mentioned that there was evidence that the assignee was Triwest Homes, "[e]xpressions of a judge during the [proceedings] cannot be considered for the purpose of contradicting deliberate findings of fact and conclusions of law that he subsequently makes and files." (*Martin School of Aviation, Inc. v. Bank of America* (1957) 48 Cal.2d 689, 695; see *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 268 ["a trial judge's prejudgment oral expressions do not bind the court or restrict its power to later declare final findings of fact and conclusions of law in the judgment"].) To the extent that the statement in the prejudgment order substituting Triwest Homes as plaintiff indicating that Triwest Homes was assignee of the purchase agreement can be considered a factual finding, it is not supported by any evidence in the record. Triwest Homes had the burden of presenting evidence of such an assignment. Without evidence of such an assignment, Triwest Homes' claims fail.

24

## IV. Ratification

Triwest Homes argues that Ostayan ratified the unexecuted assignment when he executed the grant deed transferring the property to Triwest Homes.[7]  In support of this argument, Triwest homes cites *Chatfield v. Continental Bldg. etc. Assn.* (1907) 6 Cal.App. 665 (*Chatfield*).  *Chatfield* involved a property owner's assignment of the right to sell his property.  (*Id.* at p. 666.)  The property owner settled his mortgage with the defendant by "conveying his title in the land to defendant," in exchange for the defendant's written agreement to allow the plaintiff-assignees to sell the property on commission.  (*Ibid.*)[8]

[7] ". . . California law provides that ratification generally is an affirmative defense and must be specially pleaded by the party asserting it."  (*Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, 1097, fn. 16.)  Although its complaint does not allege ratification, Triwest Homes argues that there was no need for the complaint to allege ratification when it realized that Triwest Homes was the proper plaintiff during discovery and because Ostayan did not object to the substitution of Triwest Homes as plaintiff.  Triwest Homes also argues generally that summary judgment should not be granted on technicalities in this matter because it "could have amended the complaint."  Triwest Homes fails to point to any suggestion in the record that it sought leave to amend its complaint at any time, nor does it provide legal authority suggesting that, in the absence of a specific allegation in the complaint, its theory of ratification is viable at this stage of the litigation.  Despite Triwest Homes' failure to plead ratification as an affirmative defense, or seek leave to amend its complaint, we briefly address the merits of the ratification theory.

[8] The written agreement stated: "'We hereby agree to give you the exclusive sale of property located in Novato . . . until

When the assignees sold the property, the defendant refused to convey it. (*Chatfield*, at p. 667.) Under those very different facts, the trial court found that the defendant "'ratified and confirmed said assignment of said contract and consented thereto, and authorized and empowered said plaintiffs to proceed under said contract to sell said real property.'" (*Id.* at p. 669.) The case does not suggest that the signing of a grant deed ratifies an assignment of tort claims or contractual obligations under a purchase agreement.

Nor does the grant deed itself purport to convey any rights other than to grant to Triwest Homes "real property in the City of Rancho Palos Verdes," with a detailed description of such property.

Triwest Homes has failed to show that its theory of ratification is legally tenable.

## V. Judicial estoppel and equitable estoppel

Triwest Homes asserts that the principle of judicial estoppel is applicable to prevent the trial court's purported failure to enforce the parties' stipulation. Triwest Homes cites *People v. Castillo* (2010) 49 Cal.4th 145, 155, for the proposition that enforcing a stipulation supports the dual goals of judicial estoppel to (1) maintain the integrity of the judicial system and (2) protect parties from an opponent's unfair strategies. The doctrine of judicial estoppel "'prohibits a party from asserting a position in a legal proceeding that is contrary to a position he or

_____

April 1, 1903. Should you succeed in selling this property or any portion of it, at an approximate value of over $ 5,160.10, the amount due this Association, same may be retained by you as a commission for said sale.'" (*Chatfield, supra*, 6 Cal.App. at p. 666.)

26

she successfully asserted in the same or some earlier proceeding.'" (*Kerley v. Weber* (2018) 27 Cal.App.5th 1187, 1195.) Triwest Homes asserts that the dual goals of judicial estoppel are served in this case by preservation of the stipulation to substitute Triwest Homes as the plaintiff.

The elements for the application of judicial estoppel are "'(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.'" (*Owens v. County of Los Angeles* (2013) 220 Cal.App.4th 107, 121.) Triwest Homes fails to address these elements in its opening brief or explain how they apply to this case. In considering these elements in connection with the facts of this case, we conclude the doctrine does not apply. There is no evidence in the record that Ostayan ever agreed that Triwest Homes was the legal assignee of the purchase agreement or any tort claims. Ostayan only stipulated that Triwest Homes could be substituted as the plaintiff in this action. No language in the stipulation suggests that Ostayan was stipulating to the fact that Triwest Homes was assignee of the purchase agreement.

Triwest Homes' argument fails to recognize that the stipulation and order did nothing more than substitute Triwest Homes as plaintiff in this action. It did not resolve any legal or factual issues presented in the lawsuit, including whether or not Triwest Homes was the valid assignee of the purchase agreement or DAS Fund's tort claims. In contrast to Triwest Homes'

27

position, the stipulation was enforced at all times, and Triwest Homes was permitted to be the plaintiff in the action.

Triwest Homes further argues that a similar analysis applies under principles of equitable estoppel. Under the doctrine of equitable estoppel, "'"[w]henever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it."'" (*Moncada v. West Coast Quartz Corp.* (2013) 221 Cal.App.4th 768, 782.) Triwest Homes argues that after deeding the property to Triwest Homes and later agreeing to allow Triwest Homes as the plaintiff in this action, Ostayan cannot contradict that conduct by arguing lack of standing to avoid trial of his breaches of the purchase agreement.

Ostayan's acts of deeding the property to Triwest Homes and agreeing to substitute Triwest Homes as plaintiff in this action are not equivalent to accepting Triwest Homes as the legal assignee of the purchase agreement or DAS Fund's tort claims. As set forth above, the deed transferred the property—there is no language suggesting any other legal rights were transferred. The stipulation is similarly narrow. Through the stipulation, Ostayan agreed only that Triwest Homes was "the record title holder" to the property and that Ostayan would not be prejudiced by the substitution. By agreeing to the substitution, Ostayan did not waive any legal arguments regarding the merits of Triwest Homes' complaint. Because Ostayan has not made any contradictory statement or taken any contradictory action, the doctrine of equitable estoppel does not apply.

28

## VI. Constructive notice and Ostayan's alternative theories

The trial court granted the MSJ on the alternative ground that Triwest Homes had constructive notice of the road widening requirement based on the plans available at the city. Because we have determined that the MSJ was properly granted on the ground that Triwest Homes was not the legal assignee of the purchase agreement nor any tort claims, we need not address the constructive notice theory or any alternative theories upon which Ostayan relied and which the trial court rejected. (*Vulk v. State Farm General Ins. Co.* (2021) 69 Cal.App.5th 243, 254 ["we may affirm on any basis supported by the record and the law"].)

## VII. Attorney fees

Triwest Homes' sole argument on appeal challenging the trial court's award of attorney fees is that reversal of the judgment also requires reversal of the attorney fee award. Because we have affirmed the judgment, we also affirm the award of attorney fees in favor of Ostayan.

## DISPOSITION

The judgment is affirmed. Respondent is awarded his costs of appeal.

_____
CHAVEZ, J.

We concur:

_____     _____
LUI, P. J.                   HOFFSTADT, J.

29